The **HOME INDEMNITY COMPANY**, Plaintiff–Appellee–Cross–Appellant,

v.

**LANE POWELL MOSS AND MILLER**, et al., Defendants–Appellants–Cross–Appellees.

Nos. 93–35847, 93–35874.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1994.

Decided Jan. 5, 1995.

Evan L. Schwab, Bogle & Gates, Seattle, WA, for appellants/cross-appellees.

James J. Corbelli, Lillick & Charles, San Francisco, CA, for appellee/cross-appellant.

Before: PREGERSON, CANBY and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

### FACTUAL BACKGROUND

In 1981, the fishing vessel, F/V St. Patrick, foundered near Kodiak Island. The two survivors and the estates of the ten deceased crewmembers ("plaintiffs") sued the owners of the vessel ("defendants"). The defendants were insured by a $500,000 protection and indemnity policy issued by the Home Indemnity Company ("Home"). Home hired Lane Powell Moss and Miller ("Lane Powell") to defend its insureds against the plaintiffs' injury and death claims. Recognizing that the insureds' liability exceeded the $500,000 policy limits, Home gave Lane Powell authority to negotiate for settlement of the case for the policy limits.

In October, 1982, an attorney from Lane Powell telephoned the plaintiffs' attorneys. Lane Powell claimed that during this conver-sation, its attorney made a policy limits offer which was rejected. The plaintiffs' attorneys maintained, however, that no such offer was made. Lane Powell did not make any written confirmation of the alleged oral offer.

In October, 1983, the trial court attempted to facilitate settlement by ordering Home and Lane Powell to make a written settlement offer. Home offered $387,221, the amount it considered to remain in the policy after subtracting payments already made to the plaintiffs for medical expenses, maintenance, and legal fees. The plaintiffs counter-demanded $460,000, the amount they considered remaining in the policy after medical expenses and maintenance, plus interest. Although the trial judge encouraged Home to accept the plaintiffs' offer because otherwise Home would probably face a bad faith action for refusal to settle, Home rejected the plaintiffs' counter-demand. Home contends that its refusal was based on its belief that it, through Lane Powell, had already made a policy limits offer to the plaintiffs in October, 1982, and that it therefore was protected from a bad faith claim for failure to tender the policy limits.

At trial and after appeal, the plaintiffs ultimately secured an $8.5 million judgment against the defendants and then purchased the right of action of one of the defendants against Home and Lane Powell for their alleged bad faith failure to settle the injury and death claims. Home and the plaintiffs settled the bad faith action for $7 million.

Home then brought a diversity action against Lane Powell for legal malpractice, breach of agent's duty, and contribution. The jury found for Home only on its malpractice and agency claims and awarded Home $2.45 million. Lane Powell moved for judgment notwithstanding the verdict and/or for a new trial. Home moved to amend the judgment to award contribution and enhanced prejudgment interest. The district court denied the motions, and both Lane Powell and Home now appeal. We affirm.

### LANE POWELL'S APPEAL

I. *Implied Waiver of Attorney–Client Privilege*

Lane Powell's primary argument is that the district court erred by not finding that

Home and the plaintiffs had waived their attorney-client privileges with respect to information Lane Powell sought to discover.

■ Whether a party has waived the attorney-client privilege is a mixed question of law and fact which we review de novo. *United States v. de la Jara,* 973 F.2d 746, 749 (9th Cir.1992). We will not find error in a district court's orders denying discovery, however, unless· they reflect an abuse of discretion. *United States v. Bourgeois,* 964 F.2d 935, 937 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 290, 121 L.Ed.2d 215 (1992). Because this is a diversity action, we apply the substantive law of the forum state, Alaska. Where the state supreme court has not ruled on a question in issue, "we look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Burns v. International Ins. Co.,* 929 F.2d 1422, 1424 (9th Cir.1991).

### A. Implied Waiver by Plaintiffs

■ Lane Powell sought access to information about the plaintiffs' and their attorneys' states of mind, motivations, and intent with respect to their settlement negotiations with Home. Although this information normally would be protected by the attorney-client privilege, Lane Powell argued that the plaintiffs put these matters "into issue" by bringing their bad faith claim and by asserting that the settlement negotiations in the underlying action failed because Lane Powell did not convey a timely policy limits offer. According to Lane Powell, these allegations thrust into issue the cause of the failure of the settlement negotiations, and therefore the plaintiffs impliedly waived their attorney-client privilege over communications concerning their intent to settle. The district court found, however, that there was no implied waiver of the privilege and denied discovery into these matters.

■ The standard for determining when an implied waiver of the attorney-client privilege occurs is set out in *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975). The *Hearn* test was used by the district court in this case, and neither party on appeal objects to its application. Under *Hearn,* an implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense. *Id.* at 581. In *Hearn,* an overarching consideration is whether allowing the privilege to protect against disclosure of the information would be "manifestly unfair" to the opposing party. *Id.*

Even if the plaintiffs affirmatively put into issue privileged information concerning their state of mind and motivations during the settlement negotiations, thus satisfying the first and second prongs of the *Hearn* test, we are not convinced that the information was sufficiently vital to Lane Powell's defense to fulfill the third prong of the test. The district court's rulings denying discovery into the plaintiffs' privileged communications were not "manifestly unfair" to Lane Powell because Lane Powell was not prejudiced in its defense.

· Lane Powell's main defense was that its conduct did not cause the failure to settle because the plaintiffs never intended to settle for the policy limits and in fact only wanted to "set up" a bad faith action. Therefore, Lane Powell argues that it should have been allowed to discover information concerning the plaintiffs' intent to settle, or lack thereof. The fact remains, however, that the plaintiffs did make a written offer to settle the underlying litigation for $460,000. Thus, Lane Powell's claim that the plaintiffs were unwilling to settle is without merit.

Lane Powell asserts that the motivation pleaded by the plaintiffs for making the $460,000 offer was to set up a bad faith claim. Lane Powell fails to mention, however, that what the plaintiffs actually pleaded was that their intent in making the $460,000 offer was "(1), to settle for the amount demanded; or (2), if rejected, to provide an unimpeachable basis for [establishing a] bad faith [claim]." Clearly, if the plaintiffs made a serious offer to settle their claims, they were not unwilling to settle as Lane Powell maintains. It fol-

lows then that even if there were attorney-client communications that would indicate that the plaintiffs were attempting to set up a bad faith action, they would not be relevant in light of the plaintiffs' apparent willingness to settle at the time of the $460,000 offer.

We therefore find that there was no implied waiver of the plaintiffs' attorney-client privilege and that the district court's denial of discovery into the plaintiffs' privileged communications was neither "manifestly unfair" nor prejudicial to Lane Powell.

■ Even if the district court's discovery rulings had been erroneous, they would not be subject to reversal absent some showing that the error harmed the complaining party. *See California Pub. Utils. Comm'n v. Westinghouse Elec. Corp.,* 892 F.2d 778, 783 (9th Cir.1989); Alaska Civ.Proc.Rule 61; *Alyeska Pipeline Serv. Co. v. Beadles,* 731 P.2d 572, 576 n. 12 (Alaska 1987). Because we have determined that Lane Powell was not prejudiced here, even if we were to hold that the district court erred in not allowing discovery, the error would not be sufficiently prejudicial to warrant reversal.

### B. *Implied Waiver by Home*

■ Lane Powell contends that Home waived its attorney-client privilege with respect to information concerning Home's settlement with the plaintiffs of the bad faith action for $7 million. Lane Powell argues that by seeking recovery of a portion of that settlement payment from Lane Powell, Home thrust into issue the reasonableness of that payment and thereby gave Lane Powell the right to discover all Home's privileged communications regarding its reasons for settling.

■ As part of its contribution claim against Lane Powell, Home was required to prove that the $7 million amount it paid in settlement with the plaintiffs was "reasonable." *See Ogle v. Craig Taylor Equip. Co.,* 761 P.2d 722, 726 (Alaska 1988). Lane Powell argues that Home attempted to prove the reasonableness of the settlement amount solely by stating that Home relied on the advice of its counsel in accepting the settlement offer. Home argues, however, that it proved that the amount paid was reasonable without resort to privileged communications.

The district court warned Home that if it attempted to justify its settlement on the basis of its counsel's recommendations, Home's attorney-client privilege would be waived. Conversely, so long as the reasonableness of the settlement amount was defended at trial on objective terms apart from the advice of counsel, the attorney-client privilege would be protected.

The record indicates that Home did prove the reasonableness of the settlement amount without relying on privileged communications. At trial, Home's Senior Vice President, John Hilton, testified that he authorized the $7 million settlement because at that point, there was a judgment of $8.5 million outstanding against Home's insureds which, with punitive damages, had a value in excess of $13 million. Hilton stated that he "believed that a settlement in the range of seven million dollars was not only a prudent, but ... the right thing to do on a business basis." Furthermore, Home had no written offer of settlement to the plaintiffs to prove its good faith. These facts indicate that settling with the plaintiffs for $7 million was objectively reasonable. Home did not claim at trial that the reason it entered into the settlement was the advice of counsel.

Therefore, we find that Home did not impliedly waive its attorney-client privilege because Home did not put into issue its privileged communications. There was sufficient objective evidence of the reasonableness of the settlement amount for Home to prove reasonableness to the jury without resort to its attorneys' communications.

Even if there were error in regard to waiver of the privilege, we find that it was not prejudicial to Lane Powell in view of the strong objective evidence that the settlement was reasonable.

### C. *Application of Alaska Rule of Evidence 512*

Lane Powell contends that the district court erred in applying Alaska Rule of Evidence 512 to deny Lane Powell the opportunity to ask questions designed to cause wit-

nesses to claim the attorney-client privilege before the jury and to instruct the jury that it could not draw negative inferences from the witnesses' claim of privilege.

 At trial, part of Lane Powell's defense strategy was to ask questions of Home's witnesses that caused them to claim the attorney-client privilege in the presence of the jury. This tactic was designed to point out gaps in Home's presentation of the evidence and to suggest that Home had something to hide. Home did not object until the ninth day of the 13–day trial, when Lane Powell sought to read the deposition testimony of one Home witness which contained numerous assertions of the privilege. Home cited Alaska Rule of Evidence 512, which requires that the privilege be invoked, so far as possible, outside the presence of the jury and which prohibits the drawing of negative inferences from any claims of privilege. The district court sustained Home's objection and barred further evidence or comment regarding the assertion of the privilege.

Alaska Rule of Evidence 512 provides in pertinent part:

Comment Upon or Inference from Claim or Privilege—Instruction

. (a) Comment or Inference Not Permitted. The claim of privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.

(b) Claiming Privilege Without Knowledge of Jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

(c) Jury Instruction. Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom.

Lane Powell argues that this rule should not have been applied at trial because it is procedural, rather than substantive, and therefore inapplicable in diversity cases.

We find, however, that Federal Rule of Evidence 501 required application of the Alaska Evidence Rule. Federal Rule of Evidence 501 provides: "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law." Because Alaska state law supplied the rule of decision with respect to the claims in this case, Alaska privilege rules had to be applied.

Lane Powell argues that Alaska Rule of Evidence 512, which prohibits negative inferences from a witness's claim of privilege and which allows the court to instruct the jury not to draw such inferences from claims of privilege, is not a law of privilege because it "has nothing to do with how the privilege is 'determined.'" Therefore, according to Lane Powell, state rules which do not govern specifically how privileges are determined are outside the scope of Fed.R.Evid. 501 and inapplicable in diversity cases.

We believe, however, that Alaska's law of privilege does include Rule 512 even though Rule 512 does not explicitly address how privileges are determined. Rule 512 is contained in the chapter of the Alaska Rules of Evidence which is specifically entitled "Privileges." It is part and parcel of Alaska's entire body of privilege law. Merely because the rule pertains to the drawing of inferences from privileges does not mean Fed.R.Evid. 501's mandate to apply state privilege law is inapplicable. Fed.R.Evid. 501 "dictates that we look to state law to determine whether a court must allow a jury to draw a negative inference from a party's invocation of a privilege." *Jewell v. Holzer Hosp. Found., Inc.,* 899 F.2d 1507, 1514 (6th Cir.1990).

 Therefore, we find that the district court properly applied Alaska Rule of Evidence 512 in barring Lane Powell from raising negative inferences before the jury based on Home's assertion of the attorney-client privilege and in instructing the jury not to draw such inferences.

Lane Powell further contends, however, that (1) its defense was prejudiced by the district court's late decision on the ninth day of trial to apply Rule 512 and that (2) Home waived its right to raise Rule 512 by waiting

until the ninth day to object. We find neither of these arguments convincing.

The district court notified the parties that it would make its decisions regarding privilege issues as they developed during the course of the trial. Lane Powell was not unfairly prejudiced by the district court's ruling. Actually, Lane Powell benefitted by having nine days to probe claims of privilege which could have been barred because, as we have explained *supra*, the plaintiffs' $460,000 offer of settlement rendered inquiry into attorney-client advice immaterial and Home proved the reasonableness of its settlement without relying on privileged communications.

■ Furthermore, trial courts have broad discretion in making evidence rulings and handling late objections. *See Alyeska Pipeline Serv. Co. v. Aurora Air Serv.,* 604 P.2d 1090, 1097 (Alaska 1979). Although Home may have waived its right to object to the admission of witnesses' testimony claiming the privilege prior to the ninth day of trial, *see Beech Aircraft Corp. v. Harvey,* 558 P.2d 879, 883 (Alaska 1976) (finding waiver when party failed to object until two weeks after testimony presented to jury), Home did not waive its right to object to Lane Powell's future questioning of subsequent witnesses which was designed to elicit claims of privilege. The district court did not abuse its discretion in proceeding as it did.

II. *Jury Instruction on Mitigation of Damages*

■ At trial, the district court rejected Lane Powell's request that the jury be instructed that Home had a duty to mitigate its damages by accepting the plaintiffs' $460,000 settlement offer. Lane Powell argues that this was error because Home had a duty to mitigate damages.

■ A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence. *Gauthier v. AMF, Inc.,* 788 F.2d 634, 635 (9th Cir.1986). Lane Powell's theory was that Home had a duty to mitigate its damages by accepting the plaintiffs' $460,-000 settlement offer because at that point,

Home was on notice that by rejecting the plaintiffs' offer, Home was exposing itself to tremendous liability in a subsequent bad faith action. Therefore, according to Lane Powell, Home had a duty to accept the offer to avoid increasing damages. The district court refused to give the jury instruction, however, because it was "not persuaded that this [was] a mitigation situation."

■ A wronged party must use reasonable efforts to avoid the consequences of injury done by another. *See Gates v. City of Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991). This duty to mitigate damages rests on the party claiming damages, but the burden of proving failure to mitigate falls on the breaching party. *See West v. Whitney–Fidalgo Seafoods, Inc.,* 628 P.2d 10, 18 (Alaska 1981).

■ We find that Lane Powell did not meet its burden of proving that Home failed to mitigate its damages. The duty to mitigate damages does not arise until the party upon whom the duty is impressed is aware of facts making the duty to mitigate necessary. *See Continental Concrete Pipe Corp. v. Century Road Builders, Inc.,* 195 Ill.App.3d 1, 142 Ill.Dec. 291, 301, 552 N.E.2d 1032, 1042 (1990). Home had no duty to mitigate until it actually discovered the damage done to it by Lane Powell. Lane Powell contends that it presented evidence showing Home knew a bad faith action was likely if it refused the plaintiffs' settlement offer. Two of Lane Powell's witnesses testified that they urged Home to accept the offer because otherwise, Home would face potential bad faith liability.

Lane Powell offers no evidence, however, that when Home rejected the $460,000 offer, it was actually aware of Lane Powell's alleged failure to communicate the earlier policy limits offer to the plaintiffs. In fact, Home alleged in defense to the bad faith action that Lane Powell had made a policy limits offer. Thus, Home was not aware of circumstances creating a duty to mitigate damages at the time of the plaintiffs' settlement offer. Home might have known that it would be exposed to a bad faith action, but Lane Powell did not sufficiently show that

Home knew it did not have a defense to such an action.

Because Lane Powell did not meet its burden of presenting sufficient evidence to show Home had a duty to mitigate damages, we find that the district court properly refused to instruct the jury on that duty.

### III. *Attorney–Client Relationship between Home and Lane Powell*

The district court instructed the jury that an attorney-client relationship existed between Home and Lane Powell and submitted Home's attorney malpractice claim to the jury on that basis. Lane Powell argues that the district court erred in giving this instruction because, according to Lane Powell, an attorney-client relationship does not exist between an insurer and counsel for its insured.

The district court's decision allowing the malpractice claim to go to the jury on the basis of an attorney-client relationship between Home and Lane Powell is a legal ruling which we review de novo. *See Counts v. Burlington N. R.R.*, 952 F.2d 1136, 1139 (9th Cir.1991).

Home argues that in Alaska an insurer's retention of counsel to represent its insureds creates a dual attorney-client relationship, i.e., a relationship between Home and Lane Powell as well as between Lane Powell and the insureds. Lane Powell, on the other hand, contends that the Alaska Supreme Court disfavors such a characterization. Both parties cite *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113 (Alaska 1993) in support of their arguments.

In *CHI*, the Alaska Supreme Court held that when a conflict of interest exists between the insurer and the insured, the insured has a right to independent counsel of the insured's choice. *Id.* at 1118. In that case, the insurer defended its insured under a reservation of rights whereby the insurer reserved the right to dispute coverage after the liability defense was complete. The court found that the potential conflicts were numerous, including the possibility that the insurer might offer a token defense knowing that it could later assert non-coverage, that the insurer might steer the result to judg-ment under an uninsured theory of recovery, or that the insurer might gain access to confidential or privileged information which it could later use to its advantage. Under those circumstances, the insured required the protection of completely independent counsel. *Id.* at 1116–18.

The present case, however, does not involve a reservation of rights or other conflict situation. This is not the type of case where the attorney faced an actual conflict of interest between the rights of the insured and those of the insurer. It was in the interest of both the insured and the insurer to settle within the policy limits. *CHI* did not specifically address attorney-insurer relationships in such absences of a conflict of interest. Therefore, we find that Lane Powell and Home's arguments in reliance on *CHI* are misplaced.

Subsequent to the *CHI* decision, the Alaska Supreme Court adopted the Alaska Rules of Professional Conduct. Rule 1.7(b) allows attorneys to represent more than one client in potential conflict situations. "A possible conflict does not itself preclude the representation," and "common representation of persons having similar interests is proper if the risk of adverse effect is minimal." *Id.* at comment.

In a typical insurer-insured relationship, where there is no reservation of rights, there is no actual conflict of interest that would preclude an attorney from representing both the insurer and the insured. Even in *CHI*, the Alaska Supreme Court observed that generally, when there is no reservation of rights, "there is no conflict of interest between the interests of the insurers and the interests of the insureds. Both wish to successfully defend and, if that is not possible, minimize damages." 844 P.2d at 1115. In attempting to negotiate a policy-limits settlement, the attorney would be representing the interests of both parties. Lane Powell was in just such a position when it attempted to negotiate a settlement on behalf of Home and the insureds. Lane Powell often refers to the "advice" and "recommendations" it gave to Home to settle with the plaintiffs in the initial action. In making these recommendations, Lane Powell was acting as coun-

sel as much for Home as it was for Home's insureds.

We believe that the Alaska Supreme Court would find an attorney-client relationship exists between an insurer and the counsel it retains for its insureds in this situation. We therefore find that the district court did not err in instructing the jury that an attorney-client relationship was created between Home and Lane Powell and in allowing the malpractice claim to go to the jury on that basis.

In conclusion, we affirm the district court's denial of Lane Powell's motion for judgment notwithstanding the verdict and/or a new trial. We believe that there was substantial evidence to support the jury's verdict, and we find that the district court did not abuse its discretion in refusing to grant a new trial.

### HOME'S CROSS–APPEAL

#### I. Contribution Claim

■■■ Home argues that the jury incorrectly denied its contribution claim and that the district court erred in denying its motion to amend the judgment to award contribution. When a jury is asked to decide a question of law which depends on underlying factual determinations, the jury's legal conclusion is subject to de novo review on appeal. See Oahu Gas Serv., Inc. v. Pacific Resources, Inc., 838 F.2d 360, 368 (9th Cir.), cert. denied, 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). The district court's refusal to amend or alter a judgment, however, is reviewed for an abuse of discretion. Floyd v. Laws, 929 F.2d 1390, 1400 (9th Cir.1991).

■■■ Home claims that the jury made each factual finding necessary to support Home's contribution claim but then failed to reach the appropriate legal conclusion, i.e., that Home should be awarded contribution. Home argues that the judgment should have been amended to remedy the alleged inconsistency.

We conclude that the district court properly refused to amend the judgment because Home waived its objection to the jury's verdict on its contribution claim by not objecting to the alleged inconsistency prior to the dismissal of the jury. Before the jury was discharged, the district court expressly asked Home if there was any reason not to excuse the jury, and Home responded negatively.

■■■ When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused. See Los Angeles Nut House v. Holiday Hardware Corp., 825 F.2d 1351, 1354–55 (9th Cir.1987) (citing Cundiff v. Washburn, 393 F.2d 505 (7th Cir.1968) (counsel's failure to object to inconsistency when asked by court before jury was excused constituted waiver of objection)); see also Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd., 791 F.2d 1416, 1423 (10th Cir.), cert. denied, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986); Tennessee Consol. Coal Co. v. UMW, 416 F.2d 1192, 1200–01 (6th Cir.1969), cert. denied, 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970); Kirkendoll v. Neustrom, 379 F.2d 694, 699 (10th Cir.1967) (all finding waiver when court inquired whether counsel had anything to raise before excusing jury and counsel replied negatively).

In the instant case, the district court gave Home the opportunity to object before the jury was dismissed, but Home chose not to raise any objections to the jury's verdict. This constituted a waiver of the objection on appeal.

Therefore, we find that the district court did not err in denying Home's motion to amend the judgment to include contribution because Home waived its objection to the jury's verdict by not raising it prior to the discharge of the jury.

#### II. Enhanced Prejudgment Interest

■■■ Under Alaska law, the prejudgment interest rate is 10.5%. Alaska Stat. § 45.45.010(a). Home argues, however, that the prejudgment interest rate in this case should have been enhanced to 15.5% pursuant to Alaska Stat. § 09.30.065, which provides for enhanced interest if "the judgment finally entered on the claim as to which an offer has been made under this section is not more favorable to the offeree than the offer." Home claims that it made an offer of judg-

ment to Lane Powell of $3 million, inclusive of interest, costs, and attorneys' fees, which was more favorable to Lane Powell than the actual judgment of $2.45 million plus interest and attorneys' fees. Home therefore contends that it is entitled to the enhanced rate of prejudgment interest.

The district court denied Home's motion to amend the judgment to include the enhanced prejudgment interest. We find that the district court did not abuse its discretion in this regard.

 Substantive state law determines the rate of prejudgment interest in diversity actions. *Northrop Corp. v. Triad Int'l Mktg. S.A.,* 842 F.2d 1154, 1155 (9th Cir.1988) (per curiam). Thus, Alaska's prejudgment interest statute, Alaska Stat. § 45.45.101(a), provides the applicable interest rate of 10.5%.

Alaska Stat. § 09.30.065, on the other hand, is not a prejudgment interest statute; it addresses the procedures for and consequences of making offers of judgment. Under Alaska law, prejudgment interest is compensatory, not a cost or penalty for litigation. *Farnsworth v. Steiner,* 638 P.2d 181, 184 (Alaska 1981). In contrast, the Alaska Supreme Court has held that Alaska Civil Procedure Rule 68, which provides for the application of § 09.30.065, is punitive in nature because it provides for "penal costs and sanctions" when the final judgment rendered is less favorable than the rejected offer of judgment. *Farr v. Stepp,* 788 P.2d 35, 37 (Alaska 1990). Therefore, § 09.30.065 cannot be characterized as a substantive prejudgment interest statute. It is a procedural offer of judgment provision.

Federal procedural rules govern in diversity actions. "[I]f there is a federal rule of procedure covering a particular point of practice or pleading in dispute, such rule governs in a federal diversity action even if resort to state law would lead to a different result." *Santana v. Holiday Inns, Inc.,* 686 F.2d 736, 740 (9th Cir.1982).

The district court correctly found that Fed. R.Civ.P. 68 controlled in this diversity action. Because Fed.R.Civ.P. 68 applies only to offers of judgment made by a defendant and does not provide for higher rates of interest,

Home was not entitled to an enhanced rate of prejudgment interest as a result of its rejected offer of judgment. Accordingly, we find that the district court did not abuse its discretion in denying Home's motion to amend the judgment to include the enhanced prejudgment interest.

### *CONCLUSION*

We find that the district court did not err in denying the post-trial motions of both parties in this action.

AFFIRMED.