4 P.3d 402

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Petitioner,

v.

Hon. Kenneth LEE, Judge of the Superi-
or Court of the State of Arizona, In and
For the COUNTY OF PIMA, Respondent,

and

James and Phyllis Martin, husband and
wife, and Daryl Leonard, a single man,
on behalf of themselves and all other
similarly situated individuals, Real Par-
ties in Interest.

No. 2 CA–SA 99–0022.

Court of Appeals of Arizona,
Division 2, Department A.

Aug. 5, 1999.

Review Granted Feb. 8, 2000.

Brown & Bain, P.A. By Lawrence G. Scarborough and Kelly A. O'Connor, Phoenix, and By Philip R. Higdon, Tucson, for Petitioner.

Gabroy, Rollman & Bosse, P.C. By John Gabroy and Richard Brown, and Law Offices of Garry B. Bryant By Garry B. Bryant, and Law Offices of John L. Tully, P.C., By John L. Tully and Barbara S. Burstein, Tucson, for Real Parties in Interest.

## OPINION

PELANDER, Presiding Judge.

¶ 1 In this special action, petitioner State Farm Mutual Automobile Insurance Company challenges the respondent trial judge's order compelling it to produce files and other documents in the underlying class action against it for bad faith and other related claims. State Farm contends that portions of the requested documents are protected by the attorney-client privilege and that the respondent judge erred when he determined State Farm had waived that privilege.

¶ 2 Although acceptance of special action jurisdiction is discretionary, jurisdiction properly may be exercised in cases such as this that involve the assertion of a privilege against an order compelling discovery for which there is no equally plain, speedy, or adequate remedy by appeal. See, e.g., *Arizona Dep't of Econ. Sec. v. O'Neil*, 183 Ariz. 196, 901 P.2d 1226 (App.1995); *Blazek v. Superior Court*, 177 Ariz. 535, 869 P.2d 509 (App.1994); *State ex rel. Romley v. Superior Court*, 172 Ariz. 232, 836 P.2d 445 (App.1992); see also Ariz. R.P. Spec. Actions 1 and 3, 17B A.R.S. Moreover, this special action presents us with a question of law that is of statewide significance: What is the test for determining whether a party has impliedly waived the attorney-client privilege and how does that apply here, when an insurance company denies it is relying on the advice of counsel as a

defense to bad faith and related claims? See *City of Tucson v. Superior Court,* 167 Ariz. 513, 513, 809 P.2d 428, 428 (1991) (special action jurisdiction properly accepted when "the issue presented is a pure issue of law that is of statewide significance"). We, therefore, accept jurisdiction.

¶ 3 Trial courts are afforded broad discretion with respect to discovery issues. *Blazek.* We will not disturb a trial court's resolution of such issues absent an abuse of discretion. *Id.* "A trial court abuses its discretion when it misapplies the law or predicates its decision upon irrational bases." *Id.* at 537, 869 P.2d at 511. The question of whether a privilege exists is a question of law, which we review de novo. *Id.* Similarly, "[w]hether a party has waived the attorney-client privilege is a mixed question of law and fact which we review de novo." *Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1326 (9th Cir.1995). See also *Reed v. Baxter,* 134 F.3d 351 (6th Cir.1998). Because we find that the respondent judge misapplied the law and accordingly abused his discretion, we grant relief. Ariz. R.P. Spec. Actions 1 and 3.

## FACTS AND PROCEDURAL BACKGROUND

¶ 4 In 1995, the real parties in interest, representing approximately one thousand Arizona State Farm automobile liability insureds (collectively, plaintiffs), filed a class action against State Farm, alleging claims of breach of contract, fraud, bad faith, consumer fraud, and engaging in unlawful acts in violation of A.R.S. § 13–2301(D).[1] These claims were based on State Farm's refusal, between 1988 and 1995, to allow plaintiffs who had suffered a single loss to "stack" benefits under the uninsured (UM) and underinsured motorist (UIM) provisions of multiple policies. State Farm based its refusal on the "anti-stacking" provision contained in

the policies. The provision limited an insured's recovery for any one accident resulting in death or bodily injury to one policy, preventing the insured from aggregating benefits of multiple policies. Plaintiffs contend in the underlying action that State Farm knew or should have known that its anti-stacking provision did not comply with A.R.S. § 20–259.01(H), then numbered as § 20–259.01(F), see 1996 Ariz. Sess. Laws, ch. 164, § 1, which allows an automobile liability insurer to prohibit stacking. State Farm maintains that, until our supreme court decided *State Farm Mutual Automobile Insurance Co. v. Lindsey,* 182 Ariz. 329, 897 P.2d 631 (1995), it reasonably believed that its policies did comply with the statute, insisting the law was unsettled at the time it refused to pay these claims.

¶ 5 Discovery in the underlying action has been extensive. State Farm has produced numerous documents from its claims files, but has refused to produce correspondence with counsel and notes relating to communications from counsel, on the ground that they are protected by the attorney-client privilege.[2] These documents are apparently contained in fifty-seven binders, which State Farm has catalogued in privilege and redaction logs. The documents for which State Farm has asserted the privilege are not contained in the record before us and, according to counsel at oral argument, have not been reviewed by the respondent judge.

¶ 6 Plaintiffs filed a motion to compel discovery and for in-camera review in which they argued, inter alia, that, by claiming that it had a good faith, reasonable belief that its policies complied with the statute, State Farm had placed its corporate knowledge or state of mind at issue and had thereby impliedly waived the attorney-client privilege. Plaintiffs further contended that State Farm had also waived the privilege by implicitly relying on the advice of counsel as a defense

---

1. Plaintiffs also named claims superintendent Walt Krenzer as a defendant. The trial court granted Krenzer's motion for summary judgment on the fraud claim and dismissed the bad faith and breach of fiduciary duty claims against him. We affirmed those rulings. Martin v. Krenzer, 2 CA–CV 98–0069 (memorandum decision filed December 29, 1998).

2. State Farm also claimed the documents were protected by the attorney-work product privilege. The question of whether that privilege protects any of the documents from disclosure, however, is not before us.

to the claims against it. In its opposition to the motion, State Farm denied that it would defend its refusal to permit the stacking of UM and UIM benefits based on the advice of counsel.

■ ¶ 7 After a hearing, the respondent judge granted the motion to compel discovery, finding, in relevant part, as follows:

> Plaintiff next argues that the attorney-client privilege has been impliedly waived by Defendants[3] based upon a corporate knowledge/advice of counsel defense. If a defendant sets forth a defense that it is not liable because it based its decisions on the advice of counsel then it has impliedly waived the attorney-client privilege by placing the advice of its counsel at issue. Defendants in this case claim that it [sic] has not expressly raised the defense of advice of counsel.
>
> In this case, Defendants have claimed that its managers held a good faith belief in their interpretation that stacking was not permitted under its insurance policies. While not expressly setting forth the advice of counsel defense, the facts in this case demonstrate that the Defendants' position on stacking was made after having its counsel review the applicable statutes and developing cases and advise the corporate decision makers. Thus, the advice of its counsel was a part of the basis for Defendants' position that was taken. The advice of counsel defense is impliedly one of the bas[e]s for the defense Defendants maintain in this action. Defendants have, therefore, impliedly waived the attorney-client privilege.

The respondent judge ordered State Farm to review and revise its privilege logs in light of his ruling, requiring it to produce items that were no longer protected within forty-five days and to revise the privilege logs to include any documents State Farm still believed were privileged. The judge instructed plaintiffs to file a new motion to compel production of any documents State Farm continued to withhold, in the event of a dispute as to those documents, and ordered the

parties to agree on a special master to review the documents and, presumably, to determine whether they are discoverable. This special action followed. Plaintiffs and State Farm stipulated that State Farm could withhold the documents pending the outcome of this proceeding.

### THE LAW: WAIVER OF THE ATTORNEY–CLIENT PRIVILEGE

■■ ¶ 8 This case illustrates what we believe is a recurrent clash between two evidentiary principles: the notion that relevant evidence should be discoverable on the one hand, and the fact that privileged communications or materials are not discoverable. See generally Ariz. R. Civ. P. 26, 16 A.R.S. Undoubtedly, the communications between State Farm and the attorneys from whom it has sought advice about the enforceability of the anti-stacking provision of its policies are relevant to whether State Farm had a reasonable basis for denying plaintiffs' claims. And, if it were determined that State Farm acted contrary to the advice of counsel, that would be highly relevant to plaintiffs' claims that State Farm had acted fraudulently, in bad faith, or unlawfully. But that evidence is relevant, even highly probative, is not enough to justify compelled disclosure of that which is privileged. See Ariz. R. Evid. 402, 501, 1101(c), 17A A.R.S.; see also Ariz. R. Civ. P. 26(b)(1). It is precisely because evidentiary privileges "exclude relevant evidence and impede the fact-finder's search for the truth," however, that they are construed narrowly. *Blazek*, 177 Ariz. at 537, 869 P.2d at 511. See also Morris K. Udall et al., Arizona Law of Evidence, § 71 (3d ed.1991).

¶ 9 When the holder of a privilege has waived it, there is, of course, no longer a clash between these two evidentiary principles. To determine whether the attorney-client privilege has been waived, courts generally have taken one of three approaches. In their actual application, however, these approaches are confusing, and the lines distinguishing one method from another

---

**3.** The court referred to "Defendants" throughout its minute entry. At that point, however, State Farm was the only defendant.

blurred. See *Frontier Refining, Inc. v. Gorman–Rupp Co.*, 136 F.3d 695 (10th Cir.1998).

¶ 10 Under the most restrictive approach, which State Farm urges us to adopt, the privilege may not be deemed waived unless the holder of the privilege has expressly waived it or has impliedly waived it by directly injecting the advice of counsel into the litigation. See, e.g., *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir.1994); *Harter v. University of Indianapolis*, 5 F.Supp.2d 657 (S.D.Ind.1998); *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal.App.3d 1047, 233 Cal.Rptr. 825 (1987); *Aranson v. Schroeder*, 140 N.H. 359, 671 A.2d 1023 (1995); *State v. Hydrite Chem. Co.*, 220 Wis.2d 51, 582 N.W.2d 411 (Wis.Ct. App.1998). Thus, the privilege is waived in actions against counsel for legal malpractice. See, e.g., *Byers v. Burleson*, 100 F.R.D. 436 (D.D.C.1983); 8 John H. Wigmore, Wigmore on Evidence §§ 2285, 2291, 2327 (1961). It is also waived when the holder of the privilege has expressly asserted an advice-of-counsel defense. See, e.g., *Rhone–Poulenc Rorer, Inc.*; *Handgards, Inc. v. Johnson & Johnson, Inc.*, 413 F.Supp. 926 (N.D.Cal.1976); *Transamerica Title Ins.* Co.; *Schlumberger Ltd. v. Superior Court*, 115 Cal.App.3d 386, 171 Cal.Rptr. 413 (1981).

¶ 11 The most widely accepted approach, and the one plaintiffs urge us to adopt, is essentially an intermediate test, first articulated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975). See, e.g., *Frontier Refining, Inc.*; *Home Indem. Co.*; *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095 (7th Cir. 1987); *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269 (N.D.Ill.1997). *Hearn* involved a prison inmate's civil rights action under 42 U.S.C. § 1983 against the Washington prison superintendent and other state employees for confining him in the state prison's mental health unit. Among their defenses, the defendants claimed they had acted in good faith and were therefore immune based on Washington case law on the doctrine of immunity. The inmate sought to depose and obtain documents from the state's attorney general in order to discover advice given to the employees, claiming the discovery was necessary to refute the defendants' claims of good faith. He argued that, by asserting the good faith defense, the defendants had waived the attorney-client privilege. The district court agreed and granted the inmate's motions to compel discovery.

¶ 12 Based on the views of Dean Wigmore, 8 Wigmore on Evidence §§ 2285, 2291, and cases from various jurisdictions, the court in *Hearn* found the following criteria material to a determination of whether the attorney-client privilege impliedly has been waived:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

68 F.R.D. at 581. The court found that, by raising immunity as an affirmative defense, the defendants had placed the privileged communications at issue, particularly because, to refute the defense, the inmate had to show that the state employees had acted with malice or had disregarded the law. The court also found that the legal advice the state employees had "received [was] germane to the qualified immunity defense they raised." *Id.* The court concluded that the information was essential to the inmate's ability to show that the officials had acted with malice or that they had unreasonably disregarded and violated his constitutional rights. Finding all three of the criteria satisfied, the court concluded that the privilege had been waived.

¶ 13 A minority of jurisdictions has found that the privilege is waived simply upon the assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. See, e.g., *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991); *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254 (Del.1995). Although this approach often overlaps with the test articulated in *Hearn*, it is distinct in that it broadly construes what is

sufficient to inject otherwise privileged matter into a case. Mere relevance of the otherwise protected communications is considered sufficient.

¶ 14 In *Elia v. Pifer,* 194 Ariz. 74, 977 P.2d 796 (App.1998), Division One of this court recently applied the Hearn test to determine whether the plaintiff, who had sued his former domestic relations attorney for malpractice, had waived the attorney-client privilege as to other attorneys plaintiff had retained later. In finding that the plaintiff impliedly had waived the privilege by "clearly plac[ing] in issue the communications with his later retained attorneys," *id.* at 81, ¶ 36, 977 P.2d 796, ¶ 36, Division One found Hearn's approach to be most compatible with, and closest to encompassing, the prior case law in Arizona on the waiver of privileges. We agree.

¶ 15 *Throop v. F.E. Young & Co.,* 94 Ariz. 146, 382 P.2d 560 (1963), for example, a wrongful death action arising out of a two-car, head-on collision, was one of the first cases in which an Arizona appellate court found that a privilege had been impliedly waived. The action was brought by the surviving spouse and children of the decedent against the estate of the other driver, who had also been killed, and his employer. At trial, the defendant driver's estate claimed that he had not been negligent but, rather, had died of a sudden heart attack. In response, the plaintiffs offered the deposition testimony of that driver's physician, establishing that he had at least a nine-year history of a heart condition and that the physician had warned him not to drive a car because of that condition. The defendant driver's estate objected, claiming the evidence was protected by the physician-patient privilege. Notwithstanding the objections made in chambers and again in front of the jury, defense counsel permitted large portions of the testimony to be read to the jury and failed to reassert the privilege. On appeal from a verdict rendered against it, the defendant driver's estate argued that the court had erred in allowing the privileged testimony to be read.

■ ¶ 16 Our supreme court first found the physician-patient privilege had been waived by counsel's failure to assert it at the time the plaintiffs introduced the testimony on the physician's care and treatment of the other driver. The court added that the privilege had also been waived by the defense's claim that the driver had died of a sudden heart attack. Like the *Hearn* court, the supreme court in *Throop* relied on Dean Wigmore's fairness approach to the issue of waiver, stating as follows:

> [I]t is readily apparent that defendant's claim of "sudden heart attack" on the issue of negligence was highly material and not in accord with the actual facts. The claim of privilege to buttress such a position is contrary to the spirit of the privilege and the purpose of trials to ascertain the truth. As stated in 8 Wigmore on Evidence (McNaughton Rev.1961) 855, § 2388:
>
>> A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield....

94 Ariz. at 157–58, 382 P.2d at 567–68. Compare *Bain v. Superior Court,* 148 Ariz. 331, 714 P.2d 824 (1986) (where supreme court acknowledged *Throop* and reversed trial court's finding in medical malpractice action that plaintiff had impliedly waived psychologist-patient privilege).

¶ 17 Applying the same principles of fairness, the supreme court held in *State v. Cuffle,* 171 Ariz. 49, 828 P.2d 773 (1992), that the defendant in a criminal action had waived the attorney-client privilege by claiming trial counsel had been ineffective in connection with the defendant's entry of a no contest plea. The court stated, "A defendant will not be allowed to use the attorney-client privilege as a shield to block inquiry into an issue that he has raised." *Id.* at 52, 828 P.2d at 776.

¶ 18 Similarly, in *Ulibarri v. Superior Court,* 184 Ariz. 382, 909 P.2d 449 (App.1995), which arose out of a medical malpractice

action by a patient against her psychiatrist based on their having engaged in allegedly nonconsensual sexual relations, Division One of this court granted partial relief in a special action challenging the trial court's order rejecting the patient's invocation of the marital communication privilege and the attorney-client privilege. The psychiatrist claimed the relations had been consensual and sought to discover from the patient's attorney statements the patient had made to him about their relationship. Division One found a limited, rather than a complete, implied waiver of the privilege based on the patient's having disclosed to the psychiatrist that she had told her attorney about their affair in an effort to blackmail the psychiatrist. By denying that she had ever told her attorney about the relationship with the psychiatrist and that counsel had told her to sue him, the court held she had engaged in "conduct [that] places her in such a position with reference to the evidence that to permit retention of the privilege would be unfair and inconsistent." *Id.* at 385, 909 P.2d at 452. The court added that the privilege may not be used as "both a sword and a shield." *Id.*

¶ 19 State Farm suggests, however, that, in *Certainteed Corp. v. United Pacific Insurance Co.*, 158 Ariz. 273, 762 P.2d 560 (App. 1988), this court adopted the test that permits an implied waiver of the attorney-client privilege only if an advice-of-counsel defense has been raised. We disagree. Our decision in *Certainteed* is not inconsistent with that in *Hearn.* Certainteed, a building materials supplier, sued United Pacific, the surety for the building contractor, to recover payments due on building materials supplied to the contractor. *Certainteed* claimed that United Pacific was estopped from asserting a statute of limitations defense. To rebut that claim, United Pacific sought to discover communications between *Certainteed* and its attorney. The trial court denied United Pacific's motion to compel discovery, and we affirmed. It was not necessary for us to address the issue in terms of the fairness doctrine because we found that privileged communications between *Certainteed* and its counsel had not been injected into the case. As we pointed out, *Certainteed* had not relied on the advice of counsel in responding to United

Pacific's assertion of the statute of limitations defense. *Certainteed*'s estoppel argument only placed in issue United Pacific's conduct, not communications, between *Certainteed* and its attorneys. Thus, although we did not specifically mention *Hearn*, neither the first nor the second part of that test was satisfied because *Certainteed* had not affirmatively placed the communications at issue, and our inquiry ended there.

¶ 20 Having determined that *Hearn* is the proper test for deciding whether the attorney-client privilege impliedly has been waived, we now examine the respondent trial judge's conclusion that State Farm waived the privilege in the underlying action.

## DID STATE FARM WAIVE THE ATTORNEY–CLIENT PRIVILEGE?

¶ 21 It is unclear which approach the respondent trial judge followed in concluding that State Farm had waived its attorney-client privilege. It is clear, however, that the judge based his conclusion on the finding that, notwithstanding State Farm's protestations to the contrary, it has asserted an advice-of-counsel defense. If that premise is correct, the judge's conclusion that the privilege has been waived would also be correct. See *Certainteed.* Under any approach, an insurer's express assertion of an advice-of-counsel defense in an action for bad faith waives the privilege. See, e.g., *Rhone–Poulenc Rorer, Inc.*; *Handgards, Inc.*; *Spectra–Physics v. Superior Court*, 198 Cal.App.3d 1487, 244 Cal.Rptr. 258 (1988); *Transamerica Title Ins. Co.*; *Schlumberger, Ltd.*; *Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 249 Conn. 36, 730 A.2d 51 (1999). The carrier, as the holder of the privilege, would thereby directly inject privileged communications into the case; the information would be relevant, indeed essential, to the claim against the carrier; and, to the extent the advice of counsel could provide a viable defense, the communications would be "vital" to the plaintiff's claim. See *Hearn*, 68 F.R.D. at 581. The record in this case, however, does not establish that State Farm has either expressly or impliedly asserted an advice-of-counsel defense.

¶ 22 State Farm has maintained unequivocally and emphatically in its pleadings and during oral argument in this special action that it is not relying on the advice of counsel to defend plaintiffs' claims, insisting it has made its position equally clear below. The extensive record before us bears this out. State Farm did not raise the defense in its answer to plaintiffs' complaint; it simply denied that certain court decisions undermined its position that its policies properly prohibited stacking and further denied that it acted in bad faith, committed fraud, or breached the contracts with its insureds. Although State Farm admitted in its responses to plaintiffs' requests for admissions that it consulted counsel in deciding whether the anti-stacking provision of its policies complied with § 20–259.01(H), State Farm has not claimed it will rely on counsel's advice to show that its belief was reasonable and in good faith. In fact, in its opposition to plaintiff's motion to compel discovery, State Farm expressly stated it was not raising the defense. Nowhere in its disclosure statement, filed in accordance with Rule 26.1, Ariz. R. Civ. P., did State Farm mention or suggest that it was relying on the advice of counsel to establish that its interpretation of its policies vís-a-vís § 20–259.01(H) was reasonable. And, at oral argument before this court, we specifically asked plaintiffs' counsel to direct us to any portion of the record in which State Farm had asserted the advice-of-counsel defense. Other than pointing to instances in which State Farm conceded it had consulted counsel on this issue and in which it had reiterated that its handling of stacking claims was reasonable given the law at the time and the language of its policies, counsel could not do so.

¶ 23 We conclude, then, that nothing in the record establishes that State Farm has expressly asserted the advice-of-counsel defense. Nor could the respondent judge infer, as he did, that State Farm is raising the defense, notwithstanding State Farm's insistence to the contrary.[4] Nothing supports that inference here. It does not arise from State Farm's concession that it consulted counsel in evaluating whether its policies complied with the statute. As noted above, State Farm asserts it is not relying on counsel's advice to establish that its conduct was reasonable and in good faith, but rather, merely contends that its position was objectively reasonable, based on its evaluation of the existing case law, the statute, and the policies themselves. See *Palmer v. Farmers Ins. Exch.*, 261 Mont. 91, 861 P.2d 895 (1993) (because insurer did not not plead that it had relied on information or advice in privileged documents, legal advice was not implicitly part of its defense and privileged communications were not placed at issue).

¶ 24 Our inquiry does not end here, however. We must also decide how broadly to construe the first prong of the *Hearn* test. In addition, because the second prong of the test overlaps with the first and essentially defines what type of "affirmative act" by the privilege holder will give rise to an implied waiver, we also address the second prong. That is, we must determine whether State Farm has engaged in an affirmative act that injected the privileged communications into the case and placed them at issue, even though it neither expressly nor impliedly raised the advice-of-counsel defense.

¶ 25 Plaintiffs concede that an insurer's mere denial of allegations of bad faith, fraud, and breach of contract, and its explicit or implicit assertion that its conduct was

---

4. Plaintiffs cite *In re Consolidated Litigation Concerning International Harvester's Disposition of Wisconsin Steel*, 666 F.Supp. 1148 (N.D.Ill.1987), as an example of a case in which an advice-of-counsel defense was inferred even though International Harvester insisted it was not relying on such a defense. We find that case unpersuasive. First, it is clear that the district court's conclusion that International Harvester had waived the privilege was based, to a significant degree, on the fact that International Harvester had selectively disclosed privileged material to third per-

sons, the court stating that it would be "reluctant" to grant the motion to compel discovery based on the implied waiver alone. *Id.* at 1151. Indeed, implied waiver was the opposing party's alternative ground for obtaining the discovery. Second, the court stated that, if International Harvester could defend the case without disclosing privileged communication, as it insisted it could, this, too, would be a reason not to grant the motion, further contributing to the court's reluctance to do so.

reasonable and in good faith, is not enough to inject privileged communications into a case. See *Lorenz.* They contend, however, that State Farm has done more than simply deny the allegations of their complaint. Rather, plaintiffs argue, State Farm has placed its corporate state of mind at issue, and its communications with counsel must be disclosed so plaintiffs can determine what that state of mind was when State Farm denied their claims, the basis for the denial, and, finally, whether the denial was reasonable.

¶ 26 To support their position, plaintiffs rely, to a large extent, on *Tackett.* There, State Farm's insureds brought an action against it for bad faith delay in paying their claim for UIM benefits, contending the refusal to pay was pursuant to State Farm's "Get Tough" policy. 653 A.2d at 257. Denying the allegations that it had acted unreasonably, State Farm insisted the claim was processed in a routine fashion. The insureds sought and obtained State Farm's claims file, which contained material that State Farm contended was protected by the attorney-client privilege. The trial court ordered State Farm to produce the materials, rejecting State Farm's assertion of the privilege and finding that State Farm could not argue that the claim had been handled in a routine fashion without allowing the insureds to inspect the entire file. On appeal from a jury verdict rendered against it, State Farm argued that the trial court had erred when it permitted discovery and admission of the privileged documents. In affirming, the Delaware Supreme Court held that implicit in the trial court's order compelling production was a finding that State Farm had impliedly waived the privilege. The reviewing court agreed, stating that, although merely bringing a bad faith claim against an insurer does not result in an implied waiver of the privilege, when "an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party 'an opportunity to uncover the foundation for those assertions in order to contradict them.'" *Id.* at 259, quoting *Friction Div. Products, Inc. v. E.I. DuPont de Nemours & Co.,* 117 F.R.D. 535, 538 (D.Del. 1987).

¶ 27 We find that *Tackett* placed far too low a burden on a party seeking privileged information. *Tackett* stands for the proposition that, if an insurer consulted counsel on a coverage issue and the information obtained from counsel was a basis for the insurer's decision about the routine handling of claims, the privileged information is relevant. Under *Tackett,* on that basis alone, courts may find that the holder of the privilege has affirmatively placed privileged information into the case and has impliedly waived the privilege. We decline to adopt a rule that would permit the attorney-client privilege to be so easily waived.

¶ 28 The mere relevance of privileged communications does not place them at issue so as to justify an automatic finding that the privilege has been waived. See *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 142 F.R.D. 408 (D.Del.1992) (privilege not waived merely because privileged communications were relevant in coverage action). See also *In re Consolidated Litigation Concerning Int'l Harvester's Disposition of Wis. Steel,* 666 F.Supp. 1148 (N.D.Ill.1987) (relevance alone does not defeat claim of privilege); *Johnson v. Trujillo,* 977 P.2d 152, 157 (Colo.1999) (plaintiff who made "generic claims for damages for mental suffering incident to her physical injuries" from automobile accident neither injected all aspects of mental condition into case nor impliedly waived privilege as to unrelated psychiatric and therapist records, even though records might have been relevant to causation issues and defense theory). It is likely that privileged information is relevant in most every case. See Udall, supra § 71. However, "it is the very nature of evidentiary witness privileges to 'sacrifice some availability of evidence relevant to an administration of justice.'" *Johnson,* 977 P.2d at 157, quoting Charles T. McCormick, McCormick on Evidence § 72, at 269 (4th ed.1992).

¶ 29 Moreover, that the holder of the privilege admits having consulted counsel on an issue that is itself relevant is not enough to inject the privileged information into the case. See *Rhone–Poulenc Rorer, Inc.,* 32 F.3d at 863 ("Advice is not in issue merely

because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner."); *Metropolitan Life Ins. Co.;* see also *Rockwell Int'l Corp. v. Superior Court,* 26 Cal.App.4th 1255, 32 Cal. Rptr.2d 153 (1994) (because insurer did not rely on advice of counsel as defense but, rather, on underlying facts related to coverage question, privileged communications had not been placed at issue). But see *Bilzerian,* 926 F.2d at 1292 (upholding trial court's order that if defendant charged with securities fraud were to testify that he believed his actions were legal or taken in good faith, he would impliedly waive privilege because "[h]is conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent").

¶ 30 We also reject plaintiffs' suggestion that State Farm cannot seek to establish that it acted reasonably and in good faith without referring to advice it obtained from counsel because that advice is necessary to explain State Farm's state of mind and the basis for it. Plaintiffs again rely on *Tackett,* in which the court accepted a similar argument. Denying that it was creating "a rule of per se waiver of the attorney-client privilege in insurance bad faith cases," the court stated: "[W]here, as here, an insurer makes factual representations which implicitly rely upon legal advice as justification for non-payment of claims, the insurer cannot shield itself from disclosure of the complete advice of counsel relevant to the handling of the claim." 653 A.2d at 260. We respectfully disagree.

¶ 31 State Farm insists, and the record shows, that its defense is that it reasonably believed the policies complied with the statute and that this belief was based on the pertinent case law that existed before our supreme court decided Lindsey. Based on the current state of the record, determining whether State Farm's belief was reasonable does not necessarily hinge on or inject into the case any advice it might have received from counsel. Rather, State Farm's defense is based on an objective assessment of the case law, the statute, and the policy language. We thus decline to follow *Tackett* to the extent it stands for the proposition that an insurer may not assert and attempt to prove it acted reasonably without necessarily placing privileged communications at issue.

¶ 32 We find instructive in this regard *Palmer,* a bad faith action against Farmers Insurance Exchange for refusing to pay UM benefits.[5] There, the trial court granted the plaintiff's motion to compel production of privileged documents in the claim file because experts whom Farmers intended to call at trial had based their opinions on a review of the entire claim file, which included attorney correspondence. The court then admitted the privileged documents at trial. On appeal, Farmers argued it was entitled to a new trial, and the Montana Supreme Court agreed. As that court pointed out, Farmers' defense to the allegations of bad faith was that it had denied the claim based on statements it had taken from witnesses and that, given that information, its denial had been reasonable. Farmers' claim of reasonableness was based on coverage-related facts, not on legal opinions about those facts. It had not, therefore, waived the attorney-client privilege.

¶ 33 *Metropolitan Life Insurance Co.* is equally instructive. There, the Connecticut Supreme Court considered whether the trial court had properly ordered the disclosure of written communications between *Metropolitan* and its attorneys concerning the settlements of over 200,000 underlying actions arising out of the claimants' exposure to asbestos. The court examined the nature of *Metropolitan Life's* claim that it was entitled to excess coverage from Aetna to determine whether *Metropolitan* had injected the privileged communications into the action and thereby waived the privilege. Unlike the court in *Palmer,* the Connecticut Supreme Court adopted an approach that is substantially the same as *Hearn,* referring to it as

---

5. We recognize that the court in *Palmer* adopted the most restrictive approach, only finding a waiver when an advice-of-counsel defense has been expressly raised. Nevertheless, the case is helpful in distinguishing an assertion of reasonableness based on counsel's advice from reasonableness based on objective facts.

the "at issue" exception to the attorney-client privilege. 730 A.2d at 59. Finding the documents were protected, the court stated:

Because of the important public policy considerations that necessitated the creation of the attorney-client privilege, the "at issue," or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action. Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship. In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice. . . .

. . . If admitting that one relied on legal advice in making a legal decision put the communications relating to the advice at issue, such advice would be at issue whenever the legal decision was litigated. If that were true, the at issue doctrine would severely erode the attorney-client privilege and undermine the public policy considerations upon which it is based.

*Id.* at 60–61 (citations and footnotes omitted).

¶ 34 The court found that *Metropolitan* had not expressly pleaded reliance on information or advice from counsel to show that its settlements with the claimants had been reasonable. Nor had *Metropolitan* otherwise placed privileged information at issue by obtaining legal advice concerning its obligations under the policies, even though *Metropolitan* admitted that counsel's advice "was a significant motivating factor in the . . . decisions to settle" the claims. *Id.* at 61. The court concluded that the privileged documents had not been placed at issue so as to require their production because *Metropolitan* was not "relying on the privileged communications to prove that [its] settlements

were reasonable," a subjective standard, but rather, sought to prove the settlements were objectively reasonable. *Id.* at 61. The court also concluded that Aetna's assessment of the reasonableness of the settlements could be based on "the same material that [*Metropolitan*] had available to it when making its decision—and by consulting experts, just as [*Metropolitan*] had the opportunity to do." *Id.* at 62. See also *Home Indem. Co.,* 43 F.3d at 1327 (so long as reasonableness of insurer's conduct is defended "on objective terms apart from the advice of counsel, the attorney-client privilege would be protected").

¶ 35 Similarly, even though State Farm sought legal advice on whether to permit plaintiffs to stack benefits, the current record indicates it is relying on neither the fact that it obtained such advice nor the advice itself to show that its decision to preclude stacking was reasonable and in good faith. Instead, it is claiming that its position was objectively reasonable in light of the language of the policies, the statute, and the case law before *Lindsey.* See *Aetna Cas. & Sur. Co. v. Superior Court,* 153 Cal.App.3d 467, 200 Cal. Rptr. 471 (1984) (rejecting corporate state of mind argument as basis for finding implied waiver of privilege, court concluded Aetna's claim that it had acted reasonably was based on underlying facts, not counsel's advice). See also *Rockwell Int'l Corp.*

¶ 36 We conclude that State Farm has not affirmatively placed "the protected information at issue" in this case.[6] *Hearn,* 68 F.R.D. at 581. An insurer's denial of an insured's allegations of bad faith, and its assertion that it acted in good faith and was objectively reasonable in interpreting its policy, a statute, and case law, without more, do not constitute the types of "affirmative act" that give rise to an implied waiver of the attorney-client privilege. *Id.* Although counsel's advice may, indeed, be relevant, not all relevant information is discoverable. More to the point raised here, the mere relevance of privileged information does not place it "at

---

6. Our conclusion also is consistent with A.R.S. § 12–2236, inasmuch as State Farm has not offered, and contends it has no plans to offer, any evidence or witnesses to voluntarily testify "with

reference to the communications" protected by the attorney-client privilege established in A.R.S. § 12–2234.

**358**

issue" or necessarily result in a waiver of the privilege that protects it. *Metropolitan Life Ins. Co.*, 730 A.2d at 61. Having determined that neither the first nor the second part of the *Hearn* test has been satisfied, we need not evaluate whether the privileged information is vital to plaintiffs' case, the third prong of *Hearn*'s test. Cf. *Certainteed*.

### CONCLUSION

¶ 37 The respondent trial judge erred when he concluded that State Farm is impliedly relying on the advice of counsel to defend the underlying class action. In addition, neither the record before us nor the arguments presented in this special action show that State Farm has otherwise placed privileged communications at issue. At this stage of the proceedings, State Farm has not waived the attorney-client privilege, and the respondent trial judge abused his discretion by granting plaintiffs' motion to compel production of privileged documents. That portion of the trial judge's order discussed in this decision is therefore vacated.

CONCURRING: WILLIAM E. DRUKE, Judge, and M. JAN FLÓREZ, Judge.