13 P.3d 1169

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Petitioner,

v.

Hon. Kenneth LEE, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Respondent,

James and Phyllis Martin, husband and wife, and Daryl Leonard, a single man, on behalf of themselves and all other similarly situated individuals, Real Parties in Interest.

No. CV–99–0407–PR.

Supreme Court of Arizona,
En Banc.

Dec. 8, 2000.

Motion for Reconsideration Denied
March 20, 2001.

Bryan Cave, L.L.P. by Lawrence G. Scarborough, Kelly A. O'Connor, Phoenix, and Brown & Bain, by Philip R. Higdon, Tucson,

Attorneys for State Farm Mutual Automobile Insurance Co.

Law Offices of John L. Tully, P.C. by John L. Tully, Barbara S. Burstein, Tucson, and Gabroy, Rollman & Bossé, P.C. by John Gabroy, Richard A. Brown, Tucson, and Law Offices of Garry B. Bryant by Garry B. Bryant, Tucson, Attorneys for James and Phyllis Martin, Daryl Leonard, et al.

Geoffrey C. Hazard, Jr., Philadelphia, Amicus Curiae.

American Corporate Counsel Association by Steven M. Lee, President, Arizona Chapter, Phoenix, Susan Hackett, Of Counsel, Arizona Chapter, Washington, D.C., John H. McGuckin, Of Counsel, Arizona Chapter, San Francisco, Christine D. Aguilera, General Counsel, Skymall, Inc., Phoenix, Steven T. Lawrence, Corporate Counsel, Skymall, Inc., Phoenix, Steven J. Twist, Assistant General Counsel, VIAD Corp., Phoenix, David T. Glynn, Division Counsel, SCB Computer Technology, Inc., Scottsdale, Gary E. Montielh, Corporate Counsel, Summit Builders, Phoenix, Mark N. Rogers, General Counsel, Excell Global Services, Inc., Tempe, Lee V. Bakunin, Co-Counsel, Excell Global Services, Inc., Phoenix, Gregory R. Knight, Corporate Counsel, Olympus Hospitality Group, Scottsdale, Deanie J. Reh, General Counsel, AG Communications Systems, Phoenix, James H. Curtin, Associate General Counsel, The FINOVA Group, Scottsdale, David M. Bixby, General Counsel, Banner Health System, Phoenix, Michael J. Denton, Vice President, Honeywell International, Inc., Phoenix, Gary A. Smith, MD Helicopters, Inc., Mesa, Amicus Curiae.

## OPINION

FELDMAN, Justice.

¶ 1 This is a bad faith action in which a class of policyholders of State Farm Mutual Automobile Insurance Company sought discovery of files and other documents relating to State Farm's rejection of their underinsured and uninsured motorist claims. State Farm resisted discovery, arguing the documents were protected by the attorney-client privilege. We granted review to consider the applicable standard for determining whether the privilege has been waived in cases in which the mental state of a litigant is at issue. We must also decide whether the court of appeals used the correct legal test for determining the existence of an implied waiver of the attorney-client privilege and, if so, whether the test was properly applied to the facts of this case.[1] *See* Ariz.R.Civ.App.P. 23. We have jurisdiction pursuant to Arizona Constitution, article VI, section 5(3) and A.R.S. § 12–120.24 (1992).

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In 1995, a class representing approximately 1,000 State Farm insureds (Plaintiffs) was formed to contest State Farm's denial of certain stacking claims. Between 1988 and 1995, State Farm took the position that insureds who had more than one State Farm policy covering their several cars could not apply the uninsured (UM) and underinsured (UIM) motorist coverages of those multiple policies to a single loss. For example: an insured owned two cars, each of which was covered by a separate State Farm policy. While driving car A, the insured was seriously injured in an accident. Because the other driver's insurance was not sufficient to compensate the insured for all of his damages, the insured sought additional compensation from the UIM coverage of the policies covering both car A, which was in the accident, and car B.

¶ 3 State Farm denied requests to stack UIM coverages in this manner based on an anti-stacking provision in its policy form. Plaintiffs allege that State Farm acted unreasonably because its anti-stacking language did not comply with A.R.S. § 20–259.01(H) (Supp.1999) (then numbered § 20–259.01(F)), which allowed automobile liability insurers to

---

1. We also accepted for review the question of whether the court of appeals erred in upholding State Farm's objection to Plaintiffs' request to supplement the record with excerpts from depositions taken after the special action was filed with the court of appeals. The issue is moot because, with one exception, we do not consider any of these documents in our resolution of the case. The exception is the deposition of State Farm's claims superintendent, Gillespie. That deposition is referred to, and in part quoted, by State Farm in its filings in this court. *See* Response to Petition for Review, at 5–6 n. 1.

prohibit stacking by using certain policy language. This court eventually held that State Farm's policy language did not comply with the statutory conditions permitting insurers to prohibit stacking. *See State Farm Mut. Ins. Co. v. Lindsey,* 182 Ariz. 329, 332, 897 P.2d 631, 634 (1995). State Farm claimed that until we decided *Lindsey,* it acted reasonably in interpreting A.R.S. § 20-259.01(H) to allow it to rely on the anti-stacking language in its policy form. Plaintiffs disagree and allege breach of contract, fraud, bad faith, consumer fraud, and unlawful acts in violation of A.R.S. § 13–2301(D) (Supp.1999). We consider the attorney-client privilege only in light of the bad faith and fraud counts.

¶ 4 In *Lindsey,* we held that State Farm's anti-stacking language was ineffective because it was not sufficiently clear to put policy owners on notice that A.R.S. § 20-259.01(H) was being invoked and that they therefore had a choice of which policy and which limits to apply. 182 Ariz. at 332, 897 P.2d at 634. Plaintiffs contend that even before *Lindsey* was decided, State Farm knew or should have known that its anti-stacking provision was invalid and that it was therefore acting in bad faith when it denied Plaintiffs' requests to stack. This contention is based in part on a series of pre-*Lindsey* cases involving the same or similar issues in claims made against State Farm by insureds trying to stack UM or UIM limits.[2] State Farm countered that prior to *Lindsey* it reasonably believed its anti-stacking provision complied with the statute and it was therefore not acting in bad faith.

¶ 5 During discovery, State Farm produced numerous documents from claims files in other cases and conceded it had sought and received advice of counsel about whether to pay or reject Plaintiffs' claims. State Farm denied it intended to show good faith by advancing a defense of reliance on advice of counsel and claimed correspondence with counsel relating to denial of stacking claims was protected by the attorney-client privilege. The documents in question evidently fill five privilege logs, covering communications with fifteen law firms. Plaintiffs filed a motion to compel discovery and for an in-camera review of the contested documents. They did not agree with State Farm's characterization of its position, arguing that State Farm injected the subjective good faith beliefs and mental state of its claims people as an issue in the case, thus implicitly waiving the privilege.

¶ 6 After a hearing, the trial judge granted Plaintiffs' motion to compel production of the contested documents. Evidently agreeing with Plaintiffs' characterization, the judge stated:

> Plaintiff next argues that the attorney-client privilege has been impliedly waived by Defendants based upon a corporate knowledge/advice of counsel defense. If a defendant sets forth a defense that it is not liable because it based its decision on the advice of counsel then it has impliedly waived the attorney-client privilege by placing the advice of counsel at issue. Defendants in this case claim that it has not expressly raised the defense of advice of counsel.
>
> In this case, Defendants have claimed that its managers held a good faith belief in their interpretation that stacking was not permitted under its insurance policies. *While not expressly setting forth the advice of counsel defense,* the facts in this case demonstrate that the Defendants' po-

---

**2.** State Farm relies on three Arizona cases to show that Arizona law on stacking was unsettled and its position on stacking therefore reasonable. *See Giannini v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz. 468, 471, 837 P.2d 1203, 1206 (App. 1992) (Division One held anti-stacking provision in State Farm's policies sufficient to invoke A.R.S. § 20-259.01(F) and preclude stacking in same situation presented here); *State Farm Mut. Auto Ins. Co. v. Berardi,* No. 2 CA–CV–93–0051 (App.1993) (mem.), *review denied* (March 16, 1994) (Division Two held that State Farm was required to permit stacking of policyholder's UM/ UIM claims; this decision resulted in State Farm

allowing stacking for policyholders residing within Division Two's boundaries); *State Farm Mut. Auto. Ins. Co. v. Lindsey,* 180 Ariz. 456, 462, 885 P.2d 144, 150 (App.1994) (Division One again held that anti-stacking provision in State Farm's policies "plainly encompass[es A.R.S. § 20 259.01(F)'s] limitations on stacking."). We vacated the court of appeals' opinion in *Lindsey,* holding that State Farm's policy form did not comply with the statute. 182 Ariz. at 332, 897 P.2d at 634. Plaintiffs cite the record in these same cases, and others unreported, to show that State Farm should have known Plaintiffs' claims were valid.

sition on stacking was made after having its counsel review the applicable statutes and developing cases and advise the corporate decision makers. Thus, the *advice of counsel was a part of the basis for Defendants' position* that was taken. *The advice of counsel defense is impliedly one of the bas[e]s for the defense Defendants maintain in this action.* Defendants have, therefore, impliedly waived the attorney-client privilege.

Minute Entry, Jan. 19, 1999, at 4 (emphasis added).

¶ 7 The judge's minute entry, read in light of counsel's previous briefing, shows that he accepted State Farm's avowal that it would not advance an express reliance on advice-of-counsel defense. He concluded further that State Farm would not be relying on the objective reasonableness of the decision to deny stacking. Instead, State Farm was defending Plaintiffs' claim by asserting that its claims managers held a subjective good-faith belief that their decision to deny stacking was reasonable under what they knew about the state of the law as it then existed. See, *e.g.,* State Farm's avowal that it would defend in part "on what its decisionmakers knew, thought and did." *See* Petition for Review, Appendix 5, at 1. The judge evidently believed that what State Farm knew included advice of counsel because that "was a part of the basis for" the defense. He therefore concluded that State Farm impliedly waived the privilege when it *put at issue* the subjective *legal* knowledge of its managers after they sought and received legal advice. As will be explained, we find no abuse of discretion in those findings.

¶ 8 State Farm filed a special action in the court of appeals contesting the trial judge's finding of waiver. The court of appeals held that the "judge misapplied the law" in finding a waiver because "the record shows" State Farm's "defense is that it reasonably believed the policies complied with the [anti-stacking] statute and that this belief was based on the pertinent case law that existed before ... *Lindsey.*" *State Farm Mut. Auto. Ins. Co. v. Lee,* 197 Ariz. 347, 349, 356 ¶¶ 3, 31, 4 P.3d 402, 404, 411 ¶¶ 3, 31 (App. 1999). State Farm's defense, the court said, "is based on an objective assessment of the case law, the statute, and the policy lan-

guage." *Id.* at 356 ¶ 31, 4 P.3d at 411 ¶ 31. As will be seen, we do not agree with the court of appeals' characterization of State Farm's defense. If State Farm had merely denied bad faith and defended on an objective basis, without advancing its agents' subjective understanding of the law, we would have a different case.

¶ 9 The court of appeals analyzed whether a finding of waiver was nonetheless warranted based on Arizona's adherence to the "fairness approach" in deciding waiver. *Id.* at 353–58 ¶¶ 21–36, 4 P.3d at 408–13 ¶¶ 21–36. In Arizona, a party will not be allowed to assert the privilege when doing so "places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield...." *Throop v. F.E. Young & Co.,* 94 Ariz. 146, 158, 382 P.2d 560, 568 (1963) (citing 8 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2388, at 855 (J. McNaughton rev. ed.1961)); *see also Ulibarri v. Superior Court,* 184 Ariz. 382, 385, 909 P.2d 449, 452 (App.1995), *review vacated as improvidently granted (Ulibarri v. Hancock,* 186 Ariz. 419, 924 P.2d 109 (1996)).

¶ 10 The court of appeals then decided that the so-called *Hearn* test, as articulated in *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash. 1975), was both the majority rule and the one that best comports with Arizona case law interpreting the fairness approach. *See Lee,* 197 Ariz. at 352 ¶ 14, 4 P.3d at 407 ¶ 14. The *Hearn* test sets forth three criteria that must be met to find an implied waiver of the attorney-client privilege:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

68 F.R.D. at 581.

¶ 11 The court of appeals found that prongs one and two were not satisfied because State Farm made no affirmative act

that put the privileged material at issue. *See Lee*, 197 Ariz. at 357–58 ¶ 36, 4 P.3d at 412–13 ¶ 36. State Farm denied it acted in bad faith, and a mere denial of a cause of action is not the kind of act that waives the privilege. "An insurer's denial of an insured's allegations of bad faith, and its assertion that it acted in good faith ..., without more, do not ... give rise to an implied waiver...." *Id.* at 357 ¶ 36, 4 P.3d at 412 ¶ 36 (citing *Hearn*, 68 F.R.D. at 581). We agree with this conclusion but think it inapplicable to this case. We also agree with the statement that our cases have followed WIGMORE's approach and have adopted the *Hearn* test but do not agree with the court's conclusion that the facts of this unusual case fail the *Hearn* standard, at least as it has been applied in Arizona.

## DISCUSSION

■■■■ ¶ 12 In discovery matters, including rulings on assertion of the privilege, the trial judge has broad discretion that we review only for abuse. *See Brown v. Superior Court*, 137 Ariz. 327, 331, 670 P.2d 725, 729 (1983). "The discretion, however, is a legal discretion. It includes the right to decide controverted factual issues, to *draw inferences where conflicting inferences are possible* and to weigh competing interests. It does not include the privilege of incorrect application of law or of a decision predicated upon irrational bases." *Id.* at 332, 670 P.2d at 730 (emphasis added). We follow these principles in reviewing the trial judge's order in the present case.

### A. State Farm's contention

¶ 13 An important preliminary question, and thus our first concern, is to determine State Farm's position in defending this case—a question on which there has been considerable disagreement between counsel, the trial judge, and the court of appeals. It is also a matter on which there was and is considerable disagreement in the briefs and in oral argument before this court. After reviewing the record, we think that the best characterization of State Farm's defense is that given by State Farm itself:

> State Farm made clear both here and below that its defense has both objective and subjective components because the defense

necessarily mirrors plaintiffs' claims, which themselves have both objective and subjective components. Once again, State Farm asserts that its conduct was objectively reasonable *and* subjectively reasonable and in good faith because of what its policies, the statute and the case law actually said (not what State Farm's lawyers said they said), *and because of what its personnel actually knew and did* (not what State Farm's lawyers told them to do).

State Farm's Response to Plaintiffs' Motion for Reconsideration (in the Court of Appeals), at 3 (emphasis added). State Farm's position in this court is essentially the same. Its defense will include "what its personnel actually knew and did" but "not because of what its lawyers advised." Response to Petition for Review, at 5.

¶ 14 State Farm had its agents evaluate the law—policy provisions, statutes, and cases. As part of that evaluation, the agents were informed by counsel. On the basis of this evaluation, including, we must suppose, the information gained from counsel, State Farm's agents denied the claims in good faith based on *their view of the law, not because of what its lawyers advised*. We note, of course, that State Farm does not claim—perhaps, in honesty, could not—that the lawyers' advice formed no part of the evaluation. State Farm also does not claim that the information provided by the lawyers was not included in the evaluation process but only that it did not do what it did because of what its lawyers advised. Given these avowals, we believe the trial judge was well within his discretion in concluding that advice of counsel was a part of the basis for State Farm's defense. What State Farm knew about the law obviously included what it learned from its lawyers.

■■■■ ¶ 15 The question before us is whether, having alleged that its actions were objectively and subjectively reasonable and in good faith based on its evaluation of the law—an evaluation that included advice of counsel, State Farm may then raise the privilege as a bar to prevent discovery of the information in the possession of its employees and managers when they made the subjective determination and concluded that the

law permitted them to reject Plaintiffs' claims. Of course, State Farm is not liable for bad faith just because hindsight shows its employees were wrong. On the other hand, State Farm is liable for bad faith if the evidence shows its employees could not or did not reasonably believe that the first-party stacking claims could be rejected within the bounds of the law. *See Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237 ¶ 20, 995 P.2d 276, 279 ¶ 20 (2000).[3] The information in question is very relevant and material—what information could be more important to determining what these employees and managers actually knew and reasonably believed than the advice they obtained from counsel with respect to the validity of stacking claims? But there is more than relevance and materiality needed to find a waiver, for communications with counsel are almost always very relevant and material. We conclude that under the *Hearn* test, in cases such as this in which *the litigant* claiming the privilege *relies* on and advances as a claim or defense a subjective and allegedly reasonable evaluation of the law—but an evaluation that necessarily incorporates what the litigant learned from its lawyer—the communication is discoverable and admissible.

■ ¶ 16 Thus, we agree with the court of appeals that before a waiver can be implied, a *Hearn*-like requirement of an affirmative act of putting the privileged materials at issue is necessary. *See Lee*, 197 Ariz. at 354 ¶ 24, 4 P.3d at 409 ¶ 24. We also agree that mere denial of the allegations in the complaint, or an assertion that the denial was in good faith, is not an implied waiver. *See id.* at 354–55 ¶ 25, 4 P.3d at 409–10 ¶ 25. But in this case, State Farm advances its own interpretation of the law as a defense, including what its employees knew, prior to *Lindsey*, in making that evaluation. True, State Farm does not claim that it rejected the stacking claims because of its lawyers' advice, but it does not deny that what its employees knew included information from the lawyers.

■ ¶ 17 As will be seen from our cases, there is no question that express reliance on an advice-of-counsel defense would constitute an implied waiver under almost any test. *See also* 1 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 93, at 373 (5th ed.1999). The question here is whether and when an assertion short of an express advice-of-counsel defense waives the privilege. *Hearn*, of course, found a waiver of privilege, despite the government's disavowal of reliance on an advice-of-counsel defense, because the government had affirmatively claimed a qualified immunity, thus putting in issue the question of "disregard of settled, undisputable law." 68 F.R.D. at 581–82 n. 5.

## B. The Arizona cases

¶ 18 In previous opinions, our courts have found reliance on a privilege unfair when used as both a sword and a shield. In *Ulibarri*, for instance, a patient sued her psychiatrist for medical malpractice. 184 Ariz. at 384, 909 P.2d at 451. The statute of limitations had expired, but the patient argued that the statute had been tolled because the psychiatrist repressed her memory. The psychiatrist counterclaimed, accusing the patient of attempting to blackmail him by threatening to go public with allegations of sexual misconduct. The psychiatrist alleged that as part of a blackmail scheme, the patient told him she consulted an attorney, who advised her to sue him. If true, this would show the patient remembered the incident, thus negating the tolling claim. The patient denied threatening the psychiatrist with the attorney's advice. The psychiatrist sought to depose the attorney, and the patient asserted the attorney-client privilege. The court of appeals wrote:

[I]t is only fair that [the psychiatrist] be allowed to ask the attorney whether those alleged communications occurred.

\* \* \*

"[The patient] is not permitted to thrust his lack of knowledge into the litigation as

---

**3.** We bear in mind throughout this opinion that the litigation before us is between an insurer and its insureds. State Farm's duties and obligations in this regard are somewhat more stringent than in disputes with third parties. In *Zilisch*, we said that an insurer may properly challenge fairly debatable claims, but it must also exercise reasonable care and good faith. An insurer dealing with a first-party claim must "play fairly with its insured," give equal consideration in handling the claim, and do so in fairness and honesty. 196 Ariz. at 237 ¶¶ 19–20, 995 P.2d at 279 ¶¶ 19–20 (citing and quoting from *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)).

a foundation or condition necessary to sustain his claim against [the psychiatrist] while simultaneously retaining the lawyer-client privilege to frustrate proof of knowledge negating the very foundation or condition necessary to prevail on the claim asserted against [the psychiatrist]. Such tactic would repudiate the sword-shield maxim...."

184 Ariz. at 385, 909 P.2d at 452 (quoting *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849, 856 (1985)). In *League*, a minority shareholder sued the corporate president for breach of duty, and the president raised a statute of limitations defense. The shareholder plaintiff claimed lack of knowledge of his legal rights because the transactions, he said, had been concealed from him. Applying the *Hearn* test, the Nebraska Supreme Court concluded that the plaintiff had "injected his knowledge, or lack of knowledge," as a "crucial issue ... to sustain his claim ... while simultaneously retaining the lawyer-client privilege to frustrate proof of knowledge negating the very foundation or conclusion necessary to prevail on the claim." *League*, 374 N.W.2d at 856. Plaintiff was using the privilege as both a sword and a shield. Thus, the court held the privilege had been waived.

¶ 19 In *Elia v. Pifer*, our court of appeals applied the *Hearn* test and found a waiver in a legal malpractice action in which a plaintiff claimed privilege for the communications between himself and the attorneys he hired after the defendant's alleged malpractice occurred. 194 Ariz. 74, 977 P.2d 796 (App. 1998). The plaintiff claimed the defendant attorney was negligent in accepting a divorce settlement without first discussing it with him. The attorney asserted, among other things, that the lawyers who succeeded her and who were representing plaintiff in the malpractice action caused some or all of the damages by failing to appeal the settlement decree or take other action to mitigate the damages. The defendant sought access to communications between the plaintiff and his current attorneys so that she could determine the reason for their failure to take any action to challenge the original decree incorporating the settlement. Relying on *Hearn* and *League*, our court of appeals found all three prongs of the *Hearn* test satisfied because the plaintiff denied having known of his right to appeal the original decree. *See id.* at 81–82 ¶¶ 36, 38–40, 977 P.2d at 803–04 ¶¶ 36, 38–40. The communications between the plaintiff and his lawyers were therefore placed directly at issue by the plaintiff's assertion that he lacked knowledge of his right to appeal when this lack of knowledge was the basis of his damage claim. Thus, the court concluded the party asserting the privilege was attempting to use it to shield information about his legal knowledge from the opposing party while using an alleged lack of such knowledge as a sword to further his cause of action. *See id.* at 82 ¶ 40, 977 P.2d at 804 ¶ 40. In thus applying *Hearn* and following *League*, our court of appeals said it was rejecting the strict test followed in California and other states for determining waiver of privilege and was applying the "more liberal" test of the *Hearn* case. *Id.* at 81–82 ¶¶ 37–38, 977 P.2d at 803–04 ¶¶ 37–38.

¶ 20 This, the court said "was consistent with Arizona law." *Id.* at 82 ¶ 40, 977 P.2d at 804 ¶ 40. The Arizona law the court referred to is *Throop*, in which this court found an implied waiver of the physician-patient privilege when a party defended against an allegation of negligently causing an automobile accident by denying negligence and claiming sudden heart attack as a cause of the accident. The personal representative of the deceased driver introduced a death certificate showing that the deceased died of a sudden heart attack. The plaintiff wished to introduce testimony that a doctor had told the deceased to refrain from driving because of his severe heart condition. The representative attempted to invoke the physician-patient privilege to preclude the doctor's testimony. We said that "[t]he claim of privilege to buttress such a position is contrary to the spirit of the privilege and the purpose of trials to ascertain the truth." 94 Ariz. at 157–58, 382 P.2d at 567–68. The fairness concept and the sword and shield metaphor that come up in all our later cases was first used in *Throop's* quote from WIGMORE.[4] *Id.* at 158, 382 P.2d at 568. Again, we saw

---

4. A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though

inherent unfairness of concern to the court when the deceased's medical condition was made an issue in the case, but the privilege was then raised to attempt to prevent the adversary from showing that the deceased knew of the condition.

¶ 21 Similar language was used when a criminal defendant claimed he had not been given information essential for an informed decision on his plea agreement. *See State v. Cuffle*, 171 Ariz. 49, 52, 828 P.2d 773, 776 (1992). We held that by raising that claim the defendant waived the privilege with respect to the information given to him by his attorney. *See id.* at 53, 828 P.2d at 777. The court of appeals reached a like result in a personal injury case in which the defendant was alleged to have driven under the influence. *Buffa v. Scott*, 147 Ariz. 140, 708 P.2d 1331 (App.1985). The defendant placed her physical condition in issue by testifying she had ingested only a minimal amount of alcohol. The court of appeals held that the trial judge acted within his discretion in finding a waiver of the doctor-patient privilege because the defendant had cross-examined the plaintiff's expert to gain admissions that, under the hypothesis created by defendant's testimony, plaintiff's blood alcohol level may have been much lower than the plaintiff contended. *See id.* at 143, 708 P.2d at 1334. Once the defendant made that cross-examination and argued those points, the court said, the defendant's conduct was "such that it would be both unfair and inconsistent with the privilege's purpose" to permit it to be used to prevent the admission of the blood alcohol tests made at the hospital. *Id.* at 144, 708 P.2d at 1334–35.

## C. Disavowal of express reliance on advice of counsel while defending on basis of legal knowledge or lack thereof

¶ 22 The court of appeals in the present case correctly noted that State Farm was not relying on counsel's advice to establish that its conduct was reasonable and in good faith. If State Farm were merely asking its expert witness to evaluate the reasonableness of its conduct under the statutes, the case law, and the policy language, State Farm would not

have put counsel's advice to the claims managers at issue; nor would Plaintiffs need to know what the claims managers actually believed about the legality of stacking to prove that State Farm's position was not objectively reasonable.

¶ 23 But as *our* cases have shown, a litigant's affirmative disavowal of express reliance on the privileged communication is not enough to prevent a finding of waiver. When a litigant seeks to establish its mental state by asserting that it acted after investigating the law and reaching a well-founded belief that the law permitted the action it took, then the extent of its investigation and the basis for its subjective evaluation are called into question. Thus, the advice received from counsel as part of its investigation and evaluation is not only relevant but, on an issue such as this, inextricably intertwined with the court's truth-seeking functions. A litigant cannot assert a defense based on the contention that it acted reasonably because of what it did to educate itself about the law, when its investigation of and knowledge about the law included information it obtained from its lawyer, and then use the privilege to preclude the other party from ascertaining what it actually learned and knew. Justice Martone put it well in describing an implied waiver of the marital privilege:

> Where, as here, (1) a litigant asserts a claim in which she affirmatively puts protected information at issue, (2) such information is intended to defeat a statutory defense ..., and (3) the litigant asserts the marital privilege to deny the opposing party access to evidence vital to defeating the claim, then the party asserting the privilege has waived it.
>
> Ulibarri's allegations of memory loss placed her memory at issue and were intended, at least in part, to defeat the statute of limitations defense. She then asserted the marital privilege as to communications with her husband, thus denying [defendant] vital rebuttal evidence. In my view, we should not allow a litigant "to use as a sword the protection which

not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to

permit the retention of the privilege. It is not to be both a sword and a shield.... 8 WIGMORE, *supra* § 2388, at 855.

the Legislature awarded them as a shield."

*Hancock,* 186 Ariz. at 419, 924 P.2d at 109 (Martone, J., dissenting from order vacating review as improvidently granted) (quoting *Pappas v. Holloway,* 114 Wash.2d 198, 787 P.2d 30, 36 (1990), which followed *Hearn*) (other citations omitted). While the privilege as to communications between spouses has a different purpose, those communications certainly have as much sanctity as those between lawyer and client. Thus, the above-quoted view expressed in *Hancock* accords with our previous holding that a waiver can be implied when a party injects a matter that, in the context of the case, creates such a need for the opponent to obtain the information allegedly protected by the privilege that it would be unfair to allow that party to assert the privilege. *See Ulibarri,* 184 Ariz. at 385, 909 P.2d at 452. We believe the rule was accurately stated by the Delaware Supreme Court in a case similar to the present:

> A party cannot force an insurer to waive the protections of the attorney-client privilege merely by bringing a bad faith claim. Where, however, *an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel,* it cannot deny an opposing party "an opportunity to uncover the foundation for those assertions in order to contradict them."

\* \* \*

> Our ruling does not create a rule of *per se* waiver of the attorney-client privilege in insurance bad faith cases. But where, as here, an insurer makes factual representations which implicitly rely upon legal advice as justification for non-payment of claims, the insurer cannot shield itself from disclosure of the complete advice of counsel relevant to the handling of the claim.

*Tackett v. State Farm Fire & Cas. Ins. Co.,* 653 A.2d 254, 259–60 (Del.1995) (quoting *Friction Div. Prods., Inc. v. E.I. DuPont de Nemours & Co.,* 117 F.R.D. 535, 538 (D.Del. 1987)) (other citations omitted) (emphasis added).

¶ 24 The court of appeals refused to follow *Tackett* because it believed the case "placed far too low a burden" on assertion of the privilege. *Lee,* 197 Ariz. at 355 ¶ 27, 4 P.3d at 410 ¶ 27. The court also interpreted *Tackett* to stand for the proposition "that an insurer may not assert and attempt to prove it acted reasonably without necessarily placing privileged communications at issue." *Id.* at 356 ¶ 31, 4 P.3d at 411 ¶ 31. We think the court interpreted *Tackett* too broadly but agree that an insurer may attempt to show it acted reasonably and in good faith without waiving the privilege.

¶ 25 *Tackett* involved a bad faith claim based on the carrier's delay in evaluation and its assertion that it handled the claim in a routine manner. 653 A.2d at 257. Finding that an implied waiver in that situation might open the door of waiver too widely, our court of appeals rejected *Tackett.* *See Lee,* 197 Ariz. at 355 ¶ 27, 4 P.3d at 410 ¶ 27. The court instead relied on a Montana case that refused to find a waiver of privilege in a bad faith case in which the insurer intended to call experts at trial to testify to opinions based on a review of the entire claims file, including attorney correspondence. *See id.* at 356 ¶ 32, 4 P.3d at 411 ¶ 32 (citing *Palmer v. Farmers Ins. Exch.,* 261 Mont. 91, 861 P.2d 895, 901 (1993)). We agree with the result in *Palmer* but not with its view of the law—that the privilege is not waived "unless the insurer directly relies on advice of counsel *as a defense to the bad faith charge."* *Palmer,* 861 P.2d at 907 (emphasis in original) (quoting *Spectra–Physics v. Superior Court,* 198 Cal.App.3d 1487, 1490, 244 Cal. Rptr. 258, 261 (1988)). As we have seen, our cases on the subject have rejected the California view that implied waiver will be found only when the party advances an express claim of reliance on advice of counsel. *See supra* ¶ 19. Neither *Hearn* nor our jurisprudence agrees with so restrictive an interpretation, and we reject it again today.

> A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not.

8 WIGMORE, *supra* § 2327, at 636.

¶ 26 But where is the certain point at which fairness requires that assertion of the

privilege be precluded? There is a great deal of confusion in the cases and a great deal of difficulty in reconciling them. We believe the following is a good description:

> Putting a privileged communication into issue. At least three approaches to the waiver [issue exist]: The first approach radically holds that, whenever a party seeks judicial relief, the party impliedly waives the privilege. A second approach would attempt to balance the need for disclosure against the need for protecting the confidentiality of the client's communications on the facts of the individual case. [citing *Elia*] The third approach avoids the extremes of an over-inclusive automatic-waiver rule or an indeterminate, ad hoc balancing approach. Instead, it focuses on whether the client asserting the privilege has interjected the issue into the litigation and whether the claim of privilege, if upheld, would deny the inquiring party access to proof needed fairly to resist the client's own evidence on that very issue. [citing *Hearn*]

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 80 (Reporter's Note, cmt. b) (other citations omitted). Under the first two views, the privilege might be waived whenever a client's mental state was in issue. This, according to McCORMICK, is "dubious" absent "acceptance of the Benthamite principle that the privilege ought to be overthrown to facilitate the search for truth." 1 McCORMICK, *supra* § 93, at 373. We do not accept that principle, though some of the language of our cases would seem to do so, and instead adopt a more narrow view.

¶ 27 The text of the rule reads as follows, so far as relevant to the present case:

> The attorney-client privilege is waived for any relevant communication if the client asserts as to a material issue in a proceeding that:

(a) the client acted upon the advice of a lawyer *or that the advice was otherwise relevant to the legal significance* of the client's conduct. . . .

RESTATEMENT § 80(1) (emphasis added).

¶ 28 We believe the third approach described in the Reporter's Note, as explained in comment b, is not only the best but is at least as restrictive, and perhaps more, as the one we have followed in Arizona. We therefore apply RESTATEMENT § 80 here. In doing so, we reject the idea that the mere filing of a bad faith action, the denial of bad faith, or the affirmative claim of good faith may be found to constitute an implied waiver of the privilege. The party that would assert the privilege has not waived unless it has asserted some claim or defense, such as the reasonableness of its evaluation of the law, which necessarily includes the information received from counsel. In that situation, the party claiming the privilege has interjected the issue of advice of counsel into the litigation to the extent that recognition of the privilege would deny the opposing party access to proof without which it would be impossible for the factfinder to fairly determine the very issue raised by that party. We believe such a point is reached when, as in the present case, the party asserting the privilege claims its conduct was proper and permitted by law and based in whole or in part on its evaluation of the state of the law. In that situation, the party's knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of the client's conduct. Add to that the fact that the truth cannot be found absent exploration of that issue, and the conditions of RESTATEMENT § 80 are met.[5]

¶ 29 This approach accords with the Arizona authority reviewed above—though it

---

5. The unfairness not just to the party opposing assertion of the privilege but to the entire system and its attempt to find the facts is, we think, well illustrated by reference to the deposition of Tucson Claims Superintendent Gillespie. *See supra* note 1. Review of that deposition indicates that Gillespie had little or no legal knowledge except for that supplied by State Farm's counsel. For example, when asked what legal training State Farm gave him to qualify him to make the evalu-

ation in question, the following colloquy between Plaintiffs' attorney and Gillespie took place:

Q: Tell me how they taught you about the Arizona law.

A: Specifics, I just don't recall.

\* \* \*

Q: . . . you don't remember anything at all?

A: No.

Deposition of Dwight Gillespie, July 13, 1999, at 54–55. More specifically on the stacking issue:

may be more restrictive than the view expressed in some of our previous cases—and with other courts that have followed the path we take today regarding a litigant's testimony that it not only acted properly but actually evaluated the law and drew reasonable conclusions as to the propriety of its conduct. *See League*, 221 Neb. 34, 374 N.W.2d 849; *Pappas*, 114 Wash.2d 198, 787 P.2d 30; *see also United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991). In *Bilzerian*, a securities fraud case, the defendant proposed to testify that he acted in good faith and lacked the necessary *mens rea* because he thought his actions were legal. When he went beyond denying bad faith and intent and affirmatively claimed he thought his conduct was legal, he "put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of the schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." 926 F.2d at 1292;[6] *see also Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir.1994) (once defendant injects defense that it intended to comply with law *and* acted in accord with its knowledge of law, it waives attorney-client privilege); *Apex Municipal Fund v. N–Group Securities*, 841 F.Supp. 1423, 1431 (S.D.Tex.1993) (finding waiver once defendant injects its own understanding and interpretation of law in denying fraudulent intent).

¶ 30 Justice Martone's dissent reaches the opposite conclusion, arguing that there was no implied waiver of the privilege because Plaintiffs, not State Farm, raised the subjective good faith of State Farm's claims people. In making that argument, the Martone dissent overlooks the basis of our decision. It is true that Plaintiffs raised the subjective bad faith of State Farm's employees, but it is not State Farm's denial of that allegation that waives the privilege. Nor does State Farm's affirmative assertion of good faith waive the privilege. It is, rather, State Farm's affirmative assertion that its actions were reasonable because of its evaluation of the law, based on its interpretation of the policies, statutes, and case law, and because of what its personnel actually knew and did.

¶ 31 But what its personnel did, presumably among other things, was to consult in which the privilege is asserted. Thus, in *Bilzerian*, we held that a defendant who intended to testify as to his "good faith" reliance on legal advice could not prevent the government from cross-examining him on advice received from counsel. *Because the defendant raised the advice-of-counsel defense*, and sought to rely on privileged information in the judicial setting, the court found *that if defendant so testified a broad waiver would be appropriate*. *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir.2000) (emphasis added) (citations omitted).

Of course, we have no transcript of the record in *Bilzerian*, but nothing in the opinion indicates that the defendant was to testify that he relied on legal advice or that he raised the advice-of-counsel defense. Quite to the contrary, the opinion indicates that the defendant intended to testify only to his good faith belief that his actions were legal. The portion of the opinion that concludes a discussion of the privilege issue ends with the following words, which comport almost exactly with our holding in the present case:

> The trial court's ruling left defendant free to testify without getting into his state of mind, but correctly held that if he asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal.

*Bilzerian*, 926 F.2d at 1294.

---

Q: Other than the advice they [State Farm's counsel] may have given you, can you point me to a single source of information that I can look through to find out what other legal information was provided to you or would have been available to you as Claims Superintendent?

A: No.

\* \* \*

Q: Do you have any recollection or understanding as to whether the law of stacking [UM] or [UIM] coverage was clear or unsettled [in 1990]?

\* \* \*

A: Offhand, I don't.

*Id.* at 56, 239–40 (objections omitted). Indeed, Gillespie could remember nothing about the demand or claims, other than seeing "a book or magazine" that he could not identify. *Id.* at 75. Nor did he have copies. *Id.* at 76. Nor could he explain the case law or the statutes, nor give any reason or recollection other than what the lawyers might have said. *Id.* at 290–91.

6. *Bilzerian* contains other explicit language to the same effect. *See* 926 F.2d at 1293–94. Despite this, the Second Circuit recently described *Bilzerian* in different terms, stating the following:

> Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context

counsel and obtain counsel's views of the meaning of the policies, statutes, and case law. Having asserted that its actions were reasonable because of what it knew about the applicable law, State Farm has put in issue the information it obtained from counsel. This conclusion, and the implied waiver that flows from it, is consistent with *Ulibarri, Elia, Throop,* and *Cuffle,* the Arizona cases discussed *ante* at ¶¶ 18 to 21. It is also consistent with the RESTATEMENT requirement that the "client"—meaning the party claiming the privilege—must have asserted that the advice from counsel "was otherwise relevant to the legal significance of the client's conduct." RESTATEMENT § 80(1)(a). In basing its defense on what its agents knew of the law, State Farm made the advice of its lawyers "relevant to the legal significance of [its] conduct." *Id.*

7. We have also considered the view of *amici.* See in particular the briefs of Geoffrey C. Hazard, Jr. and the American Corporate Counsel Association (ACCA). Professor Hazard, a distinguished authority, argues that while the "put in issue" exception to the privilege is recognized, it should be limited to situations in which the claimant relies on advice of counsel to the extent of claiming that what he did "may be illegal but my lawyer told me it was OK." Hazard brief, at 3. Thus, Professor Hazard rejects the "balancing test" of *Hearn,* concluding there is "really no room" for such a test with respect to an evidentiary privilege so long as the party claiming the privilege did not attempt to use the attorney's advice to escape liability. *Id.,* at 5–6. But Arizona long ago rejected that view, considered and used the fairness element contained in WIGMORE's approach, adopted the balancing test of *Hearn,* and, as we have seen, applied it in a number of cases.

The ACCA argues that the privilege is not waived simply because a litigant has consulted counsel or denied the allegations made by its adversary. This is not enough "to place privileged communications 'at issue' and thereby waive the privilege." ACCA brief, at 5. Nor is the mere fact of relevance sufficient to place the communications at issue. *Id.* But we agree with these contentions. So did Plaintiffs, who argue instead that "a privilege holder *does* waive the privilege by narrowing a general denial of the allegations of the plaintiff's complaint to a specific factual assertion that implicates privileged communications where the opposing party is also denied an opportunity to effectively rebut and/or explore the basis of the ... assertion." Plaintiff's Response to ACCA brief, at 2 (emphasis added). As we have seen, this is the Arizona law on the subject. The specific factual assertion in the present case is State Farm's claim that it acted reasonably and in good faith because its

¶ 32 The Martone dissent argues that State Farm has not said the lawyers' advice was relevant to the legal significance of its conduct. Dissent at ¶ 48. True, but such an assertion is the functional equivalent of an express advice-of-counsel defense. Most sophisticated litigants will know better than to dig that hole for themselves. We do not read the RESTATEMENT to require such a magical admission, nor to require that the court accept as dispositive the client's assertion that it did not rely on the advice it received. Dissent at ¶ 51. If it asserted that it had relied, of course, that would, again, be equivalent to an express advice-of-counsel defense.

¶ 33 There is, of course, room for disagreement on this subject, and there is plenty of disagreement.[7] *See, e.g., Palmer,* 861 P.2d at

personnel made an evaluation of the law as it pertained to the policy language, Arizona cases, and statutes, and reached the subjective, good-faith conclusion that the law permitted denial of the stacking claims. Thus, the hypotheticals presented in ACCA's brief do not accurately reflect the narrow holding of this opinion. For example, ACCA presents the following hypotheticals: "[B]efore placing its new product on the market, a manufacturer consults with corporate counsel about the level of detail required for its product warnings. An injured consumer sues ... [and the] corporation defends on the theory that its warnings were reasonable." ACCA brief, at 6. Nothing in this opinion would justify finding a waiver of the attorney-client privilege. Similarly, there is no waiver in the following example: "A corporation does not hire a job applicant. The applicant sues, alleging ... age discrimination. The corporation denies ... the allegation that it acted out of a discriminatory intent [and] Plaintiff now argues ... [waiver of] the privilege concerning all discussions with corporate counsel on employment policies." *Id.* These and the other hypotheticals posed do not involve the assertion by the privilege holder of a specific factual claim that involves good-faith conduct based on subjective evaluation of the law. It is not enough that plaintiff brings the privilege holder's mental state in issue. The waiver exists only when the privilege holder raises and defends on the theory that its mental state was based on its evaluation of the law and the facts show that evaluation included and was informed by advice from legal counsel.

For the same reasons, we disagree with Justice McGregor's argument that "any plaintiff [or other litigant] who advances a subjective claim seemingly will waive the privilege if, before asserting his claim, he consults with his lawyer and uses the knowledge obtained to reasonably evalu-

904–05, 907 (citing California cases that our cases have rejected); *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir.1994). *Rhone–Poulenc* held that there is an implied waiver only if the party expressly advances the defense that he relied on advice of counsel; it rejects cases such as *League* and *Hearn* as "of dubious validity" because of their use of a "checklist of factors" and the fairness test. *Id.* at 863–64. It is, of course, late in Arizona's day to reject WIGMORE's fairness test, which we first adopted almost forty years ago in *Throop*, which is incorporated in the *Hearn* doctrine and which Arizona has consistently applied in our cases since *Throop*. It is that doctrine that the trial judge, having been cited to *Hearn*, followed and applied in the present case. Nor do we believe we would adopt the restrictive test of *Palmer* and *Rhone–Poulenc* even if today we were writing on a clean slate. It simply makes a mockery of the law to allow a litigant to claim on the one hand that it acted reasonably because it made a legal evaluation from which it concluded that the law permitted it to act in a certain manner, while at the same time allowing that litigant to withhold from its adversary and the factfinder information it received from counsel on that very subject and that therefore was included in its evaluation. The sword and shield metaphor would truly apply were we to allow a party to raise the privilege in that situation.

¶ 34 By asserting the subjective evaluation and understanding of its personnel about the state of the law on stacking, State Farm has affirmatively injected the legal knowledge of its claims managers into the litigation and put the extent, and thus the sources, of this legal knowledge at issue. State Farm's

claims managers cannot testify that they investigated the state of the law and concluded and believed they were acting within the law but deny Plaintiffs the ability to explore the basis for this belief and to determine whether it "might have known its actions did not conform to the law." *Cox*, 17 F.3d at 1418. Therefore, the privilege is waived as to communications between State Farm and its counsel regarding the propriety of State Farm's policy of denying stacking prior to our decision in *Lindsey*.[8]

■ ¶ 35 State Farm argues, however, that it only raised the subjective beliefs of its claims people because Plaintiffs alleged State Farm not only misinterpreted the law but knew it was doing so. Thus, State Farm says, it was Plaintiffs who injected the issue of subjective belief. It is, of course, difficult for State Farm to meet Plaintiffs' allegation without affirmatively alleging that it investigated and evaluated the law, but it could do so simply by denying that it knew it was acting unlawfully and relying on a defense of objective reasonableness. *See Bilzerian*, 926 F.2d at 1292–93. That would force Plaintiffs to try to prove State Farm knew it was acting unlawfully. *See United California Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 294, 681 P.2d 390, 446 (App.1983) (litigant cannot ordinarily call its attorney as material witness to communications with other party and then claim privilege on cross-examination); *see also Buffa*, 147 Ariz. at 143, 708 P.2d at 1334. In any event, whichever strategy State Farm were to follow, and no matter whether the privilege applied, State Farm was faced with serious problems about

ate his claim." McGregor dissent at ¶ 55. The examples given by Justice McGregor do not involve situations in which, as in the present case, the litigant asserts that his conduct was justifiable based on a particular mental state resulting from his investigation of the law and consequent knowledge of what the law permitted.

8. This, of course, does not mean the privilege was waived as to communications between State Farm and its counsel on other subjects pertaining to the stacking claims. There may have been communications regarding whether an opposing motorist was uninsured or underinsured, evaluations of damages and liability defenses, and the like. Plaintiffs are not entitled to a fishing expedition through all of counsel's communications

on each of the stacking claims but only to discovery of those communications pertaining to the permissibility or deniability of stacking under the policy language, the case law, and the statutes as they existed at the time the claims were presented: the information, in other words, that was part of what State Farm knew in reaching its evaluation of the law. The trial judge took great care to prevent a fishing expedition and to narrow discovery by permitting State Farm to continue to withhold portions of its files, to amend its logs to explain the reasons for withholding communications, and to appoint a master to resolve any further dispute as to documents not produced by State Farm pursuant to the trial judge's order. *See* Minute Entry of January 19, 1999.

the advice of counsel. It is, in some ways, between Scylla and Charybdis.

¶ 36 Given State Farm's defense that it acted reasonably in investigating and evaluating the law, and even assuming the privilege applies, it would not protect the fact that the claims managers consulted counsel on the stacking issue. *See Ulibarri*, 184 Ariz. at 385, 909 P.2d at 452 ("[T]he fact that a client has consulted an attorney, the identity of the client, and the dates and number of visits to the attorney are normally outside the scope and purpose of the privilege.") .(quoting *Granger v. Wisner*, 134 Ariz. 377, 380, 656 P.2d 1238, 1241(1982)). Plaintiffs are free to elicit this information and perhaps to force State Farm's witnesses to claim the privilege while the jury is present. *See United California Bank*, 140 Ariz. at 294–95, 681 P.2d at 446–47.[9] This may put State Farm in the difficult position of admitting that it sought its attorneys' advice on stacking, then attempted to prevent the factfinder from knowing whether it ignored, followed, or disagreed with that advice. The pragmatic difficulties of the matter are obvious.

¶ 37 Thus, we can agree with both dissents that it might have been better strategy for Plaintiffs to let State Farm assert its privilege or for State Farm to either waive its privilege or not assert its claim of justifiable conduct based on its subjective evaluation of the law. *See* Martone dissent at ¶ 48, McGregor dissent at ¶ 57. But we decide the case as presented. State Farm advances the argument that its conduct was reasonable and in good faith because of its investigation of the law and the resultant subjective belief of its claims people. That investigation and knowledge included the opinions it received from its lawyers. Under well established Arizona precedent, it cannot, on the one hand, claim that what it discovered and what it knew following that legal investigation led it to a reasonable, good-faith conclusion that it could and should deny the claims of its insured and, on the other hand, prevent the court and jury from learning what it discovered and what it knew.

¶ 38 To the same effect, Justice McGregor's dissent postulates several hypothetical cases in which she fears that as a result of this opinion, the privilege will be waived because the litigant will have consulted with counsel. *See* McGregor dissent at ¶ 55. But nothing in this opinion could or should produce such a result. We assume client and counsel will confer in every case, trading information for advice. This does not waive the privilege. We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege. Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses. This does not waive the privilege. All of this occurred in the present case, and none of it, separately or together, created an implied waiver. But the present case has one more factor—State Farm claims its actions were the result of its reasonable and good-faith belief that its conduct was permitted by law *and* its subjective belief based on its claims agents' investigation into and evaluation of the law. It turns out that the investigation and evaluation included information and advice received from a number of lawyers. It is the last element, combined with the others, that impliedly waives the privilege. State Farm claims that its actions were prompted by what its employees knew and believed, not by what its lawyers told them. But a litigant cannot with one hand wield the sword—asserting as a defense that, as the law requires, it made a reasonable investigation into the state of the law and in good faith drew conclusions from that investigation—and with the other hand raise the shield—using the privilege to keep the jury from finding out what its employees actually did, learned in, and gained from that investigation.

¶ 39 As we said in *Ulibarri* and noted in ¶ 18 above:

---

9. *United California Bank* is a civil case. *Cf. State v. Holsinger*, 124 Ariz. 18, 22–23, 601 P.2d 1054, 1058–59 (1979) (comment not allowed in criminal case); *see also* Deborah Stavile Bartel, *Drawing Negative Inferences Upon a Claim of the Attorney Client Privilege*, 60 BROOK.L.REV. 1355 (1995). Our rules of evidence do not cover the question of comment on exercise of the privilege. Proposed Fed.R.Evid. 513 would have prohibited comment, but that rule was rejected before it went into effect. *See* 26A CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE, *Evidence* § 5751 (1992).

[The plaintiff] is not permitted to thrust his ... knowledge into the litigation as a foundation ... to sustain his claim ... while simultaneously retaining the lawyer-client privilege to frustrate proof ... negating ... the claim asserted. Such [a] tactic would repudiate the sword-shield maxim.

184 Ariz. at 385, 909 P.2d at 453. This has been and remains our jurisprudence on the subject. *See also Elia,* 194 Ariz. at 81–82 ¶¶ 36, 38–40, 977 P.2d at 803–04 ¶¶ 36, 38–40; *Throop,* 94 Ariz. at 158, 382 P.2d at 568.

## CONCLUSION

¶ 40 We believe the trial judge's characterization of State Farm's position was reasonably correct under Arizona law. We must therefore defer to his finding that State Farm implicitly asserted the advice of counsel as a defense when it made its claim of good-faith conduct turn on its legal research and the resulting subjective legal knowledge of its claims managers at issue in the case and when that knowledge necessarily included the advice of counsel as part of the decision-making process. Therefore, the court of appeals' opinion is vacated, and the trial judge's order granting Plaintiffs' motion to compel is approved. The superior court may proceed with the case in a manner not inconsistent with this opinion. Of course, the propriety of the claim of privilege and its recognition or rejection as to any particular is not a static matter and may be considered or reconsidered by the trial judge as the case develops.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, and CHARLES E. JONES, Vice Chief Justice.

MARTONE, Justice, dissenting.

¶ 41 I agree with the majority that the *Restatement (Third) The Law Governing Lawyers* § 80 (2000) and *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975), set forth the appropriate rule on when a client impliedly waives the attorney-client privilege by putting assistance or communication in issue. Indeed, I subscribed to this view before the majority did. *See Ulibarri v. Hancock,* 186 Ariz. 419, 924 P.2d 109 (1996) (Martone, J., dissenting). But the *Restatement* and *Hearn* both require the *privilege holder,* not the

other party to the litigation, to affirmatively inject an issue which implicates privileged communications. The majority misapplies *Hearn* and the *Restatement* by finding waiver even where the plaintiffs, who are not the privilege holders, injected the issue of State Farm's understanding of the law.

¶ 42 I first examine *Hearn* and the *Restatement* more closely to see that this is so. I then apply *Hearn* and the *Restatement* to a bad faith tort case. It then becomes apparent that the majority has ignored the critical elements of both *Hearn* and the *Restatement.*

¶ 43 In *Hearn,* the plaintiff brought claims of violation of due process and cruel and unusual punishment, neither of which implicated the defendants' attorney-client privilege. The defendants then asserted an affirmative defense of immunity from suit, which was valid only if they were acting in good faith. *See Hearn,* 68 F.R.D. at 577. Thus the defendants, the privilege holders, raised the issue of good faith. The defendants were both the persons who asserted the privilege and the persons who committed an affirmative act by raising the issue of good faith.

¶ 44 The *Restatement* requires the same two elements. It provides as follows:

§ 80. Putting Assistance or a Communication in Issue

(1) The attorney-client privilege is waived for any relevant communication if *the client asserts* as to a material issue in a proceeding that:

(a) the client acted upon the advice of a lawyer or *that the advice was otherwise relevant to the legal significance of the client's conduct.*

*Restatement* § 80 (emphasis added). Note that it is not enough "that the advice was otherwise relevant to the legal significance of the client's conduct." Instead, the client must assert that the advice was otherwise relevant to the legal significance of the client's conduct. While the majority adopts the *Restatement,* it completely ignores the *Restatement*'s requirement that the client must assert that the advice was relevant. Contrary to the majority's contention, State Farm has made no such assertion in this

case. That the *Restatement* requires that the client assert that the advice was relevant is clear not only from its language but also from the rest of the comment quoted by the majority, *ante* ¶ 26. "The preferred approach is to require that the client either permit a fair presentation of the issues *raised by the client* or protect the right to keep privileged communication secret by not *raising* at all an issue whose fair exposition requires examining the communications." *Restatement* § 80 (Reporter's Note, cmt. b) (emphasis added). Thus the *Restatement* would allow State Farm to make a choice between refuting the bad faith claim on the basis of interpretation of the law without reliance on legal advice, a difficult proposition at best, or reliance on that advice and waiver of the privilege.

¶ 45 The majority relies upon a series of cases to illustrate the injection of an issue into a case. *Ante* ¶¶ 18 through 21. Yet all of the cases cited involve a claim or defense *raised by the privilege holder* who then attempted to use the attorney-client privilege as a shield.

¶ 46 The majority says that "[i]f State Farm had merely denied bad faith and defended on an objective basis, without advancing its agents' subjective understanding of the law, we would have a different case." *Ante* ¶ 8. But a bad faith defendant cannot do this. Every bad faith claim requires proof of both objective and subjective unreasonableness on the part of the insurer. *Noble v. National Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). As we said in *Zilisch v. State Farm Mutual Automobile Insurance Co.*, 196 Ariz. 234, 238, 995 P.2d 276, 280 (2000), "[t]he appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and *either knew or was conscious of the fact that its conduct was unreasonable.*" (Emphasis added.) It is thus the plaintiff, not the privilege holder defendant, that puts at issue the subjective reasonableness of the defendant's conduct. Indeed, the plaintiff must inject the issue of subjective unreasonableness into the litigation. In denying the claim of bad faith, therefore, the defendant necessarily denies that it "knew or was conscious of the fact that its conduct was unrea-

sonable." *Id.* The majority now will require a bad faith defendant to choose between defending against both prongs of the *Noble/Zilisch* test, and thereby waiving the attorney-client privilege, or defending solely on the objective reasonableness of its decision. This means that no bad faith defendant can properly defend the action without waiving the privilege. It can thus be seen that the majority's application of *Hearn* and the *Restatement* in the context of this bad faith case completely subverts the critical elements of the test. It is the plaintiffs, not State Farm (the privilege holder), that affirmatively put into issue the question of bad faith and thereby the subjective reasonableness of the defendant's conduct.

¶ 47 The majority errs in asserting that State Farm waived the privilege by putting its decision-makers' subjective understanding of the law into issue. By claiming that State Farm developed an interpretation of the law that was in bad faith, plaintiffs injected the reasonableness of State Farm's subjective interpretation of the law into the case. Under the majority view, a plaintiff may abrogate the defendant's attorney-client privilege simply by raising a bad faith claim on any matter regarding an interpretation of the law.

¶ 48 Now it may well be that an insurer would be willing to make a coverage decision without relying on the advice of its lawyers. But the prudent insurer will consult a lawyer and under today's decision that advice always will be admissible in an action against it claiming bad faith, despite the majority's protestations to the contrary.

¶ 49 This would be a different case if State Farm raised an affirmative defense such as, to the use the words of the *Restatement,* asserting that it "acted upon the advice of a lawyer," or asserting "that the advice was otherwise relevant to the legal significance of [its] conduct." *Restatement* § 80. But State Farm has not asserted that it acted upon the advice of its lawyer. And State Farm has not asserted that that advice was otherwise relevant to the legal significance of its decision. All it did was put the plaintiff to its burden of proving both objective and subjective unreasonableness.

¶ 50 The case also would be different if State Farm, despite its disavowal of an advice of counsel defense, introduced evidence which implicated privileged communications. For example, if during direct examination a State Farm officer volunteered information contained in privileged communications, there would be waiver. But if the same information were elicited on cross-examination, over objection, State Farm would preserve its claim of privilege. *See generally, e.g., Buffa v. Scott,* 147 Ariz. 140, 142, 708 P.2d 1331, 1333 (App.1985) (finding disclosures under compulsory cross-examination are involuntary and do not constitute a waiver). The difference in result is based upon a critical distinction. In the former case, the *privilege holder* offers the evidence, but in the latter the opponent offers the evidence.

¶ 51 Under the *Restatement,* which the majority says it follows, State Farm has a choice in defending this matter. Yet under the majority's approach, it has no choice. Once it denies an essential allegation of the claim (subjective reasonableness of its resolution of the coverage question), it waives its privilege. This is wrong. The *Restatement* approach advances two important policy objectives. It advances the policy behind the attorney-client privilege and it allows for a fair result. Properly applied, the *Restatement* and *Hearn* would give State Farm the difficult choice of either defending the subjective element of the bad faith claim without evidence of legal advice or waiving the privilege.

¶ 52 The majority holds that "waiver exists only when the privilege holder raises and defends on the theory that its mental state was based on its evaluation of the law and the facts show that evaluation included and was informed by advice from legal counsel." *Ante* ¶ 33 n. 7. But State Farm expressly disavowed in this case that its "evaluation included and was informed by advice from legal counsel." The majority is unfaithful to both *Hearn* and the *Restatement,* and exposes every bad faith defendant to a claim of waiver of the attorney-client privilege whenever that defendant has consulted a lawyer, even though subjective unreasonableness is injected by the plaintiff's complaint and not the defendant's defense.

¶ 53 I therefore respectfully dissent.

McGREGOR, Justice, dissenting.

¶ 54 I agree with Justice Martone's dissent. I write separately to emphasize the degree to which today's opinion undermines the attorney-client privilege. Although the majority attempts to limit the scope of its holding, at best the opinion introduces intolerable uncertainty into the question whether attorneys and their clients can regard communications as privileged.

¶ 55 The impact on privileged communications derives from the majority's broad description of the conditions under which a litigant waives the attorney-client privilege. As the majority explains, "[I]n cases such as this in which *the litigant* claiming the privilege *relies* on and advances as a claim or defense a subjective and allegedly reasonable evaluation of the law—but an evaluation that necessarily incorporates what the litigant learned from its lawyer—the communication is discoverable and admissible." *Supra* ¶ 15. Or, put another way, "When a litigant seeks to establish its mental state by asserting that it acted after investigating the law and reaching a well-founded belief that the law permitted the action it took, then the extent of its investigation and the basis for its subjective evaluation are called into question." *Supra* ¶ 23. If that is the test for waiver of this important privilege, I cannot agree that no waiver occurs in the examples set out in footnote 7 of the majority opinion. In both, the defendant, in denying the plaintiff's allegations, necessarily relies upon its knowledge that includes advice from its lawyer.

¶ 56 But today's holding, which applies not only to plaintiffs' bad faith claim, but also to the counts alleging fraud, *supra* ¶ 3, will sweep even more broadly. If a defendant can waive the privilege simply by relying upon knowledge gained, in part, through advice of counsel to deny a plaintiff's allegations, any plaintiff advancing a subjective claim will run the risk of waiving the privilege simply by filing an action. A plaintiff who advances a subjective claim seemingly will waive the privilege if, before asserting his claim, he consults with his lawyer and uses the knowledge obtained to reasonably evaluate his claim. Because many, perhaps most, potential litigants *do not know the*

elements of claims they seek to assert before consulting a lawyer, and do not understand whether they possess sufficient basis to assert a claim, a plaintiff's decision to proceed with an action necessarily relies upon the advice of counsel. For instance, these plaintiffs presumably consulted with their attorneys before bringing this action for bad faith, which involves the subjective element described by the majority. If so, their reliance on their "subjective and allegedly reasonable evaluation of the law—but an evaluation that necessarily incorporates what the litigant learned from its lawyer [renders] the communication ... discoverable and admissible." *Supra* ¶ 15. Can the defendant now discover otherwise privileged communications to determine whether the plaintiffs in fact had a basis for making their claim? Similarly, a plaintiff in a personal injury action who claims subjective damages for pain and suffering could be found to have waived the attorney-client privilege if the knowledge on which she bases her claim and right to bring it derive, at least in part, from communications with counsel. If bringing the claim does not itself waive the privilege, is an assertion from the defendant that the plaintiff lacked a good faith basis for bringing the claim sufficient to waive the privilege? And if the defendant's assertion alone does not waive the privilege, surely, in the words of the majority opinion, the plaintiff's denial of the argument that he lacked a good faith basis for his claims constitutes an attempt "to establish [his] mental state by asserting that [he] acted after investigating the law and reaching a well-founded belief that the law permitted the action [he] took...." *Supra* ¶ 23. As I understand the language of the majority, today's opinion permits finding waiver in either situation described above, and will permit waiver in many other situations not yet foreseen.

¶ 57 The majority suggests, but does not say, that its holding depends upon the fact that this litigation involves a first-party insurance claim. *Supra* note 3. Perhaps an argument can be made that an insurer cannot expect communications with its attorneys to remain privileged when it considers an issue on which it must give the interests of another party, its insured, consideration equal to that it gives its own interest. *See,*

*e.g., Zilisch v. State Farm Mut. Auto. Ins. Co.,* 196 Ariz. 234, 235–36, 995 P.2d 276, 278–79 (2000). As discussed above, however, the majority's opinion addresses a much broader context.

¶ 58 Today we make the scope of the attorney-client privilege uncertain, at best, and abrogate the privilege in many instances, at worst. We do so without any real need to take such a drastic step. As both the majority, *supra* ¶¶ 35, 36, and Justice Martone, *supra* ¶ 48, point out, State Farm faced a difficult task in responding to plaintiffs' bad faith claim without asserting it relied upon advice of counsel. Had this litigation continued its natural course, State Farm might have chosen to waive its privilege rather than face the difficulty raised by defending without reference to legal advice. But the decision of which defense to advance was for State Farm, which was justified in assuming that unless and until it put its reliance on counsel at issue, its earlier communications with counsel would remain privileged.

¶ 59 To permit plaintiffs to discover communications that they quite probably do not need to establish their claim, we have placed in jeopardy countless attorney-client communications, which litigants rightly anticipated would be confidential. We also have introduced needless uncertainty into the attorney-client relationship, and have discouraged persons from seeking needed legal advice, which they cannot assume will remain confidential. Because I believe the result of today's opinion will be to cause extensive, unjustified waiver of the attorney-client privilege, I respectfully dissent.